## SCHRAM v. UNITED STATES.
### No. 8362.

Circuit Court of Appeals, Sixth Circuit.
March 4, 1941.
Rehearing Denied April 15, 1941.

Robert S. Marx, of Cincinnati, Ohio (Robert S. Marx, of Cincinnati, Ohio, Carl Runge, Lawrence I. Levi, and Frank M. Wiseman, all of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellant.

Carlton Fox, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., John C. Lehr and J. Thomas Smith, both of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Suit by Schram, receiver of First National Bank-Detroit, for alleged overpayment of income taxes by Peoples Wayne County Bank in the sum of $88,940.20 for the taxable period from February 16 to December 31, 1928, and $11,538.38 for the taxable year 1929.

The case was tried without a jury upon undisputed and stipulated facts and resulted in a judgment for the defendant. Hence this appeal.

On February 15, 1928, the Peoples State Bank and the Wayne County & Home Savings Bank were consolidated to form the Peoples Wayne County Bank, the taxpayer, which later became absorbed into the First National Bank-Detroit. The basis of appellant's claim is that the Commissioner refused to permit the taxpayer retrospectively to change the method of accounting to a cash basis as to three categories of income and one of interest-expense for the periods involved.

The evidence shows that items in the three income categories, namely, interest received, (1) on mortgage loans; (2) on bonds other than United States bonds; and (3) on account of loans and discounts on notes, were not credited on the taxpayer's books when they were paid nor when they were earned.

In the case of the mortgage loans, except for the first two months after consolidation, and in the case of the bonds, the taxpayer's practice had been to credit interest on its books during the latter part of the month preceding that in which the interest or coupons became due and payable. In the case of interest received on loans or discounts the custom was to add the amount of interest or discount to the face of the note on the date it was made or discounted, and to carry the notes in the bills receivable account, even though the interest or discount was not paid until a later date.

This was the practice of taxpayer's predecessors with the exception that the Peoples State Bank did not credit interest on mortgages until it was paid.

Items in the expense category, to wit, interest paid on savings accounts, were charged to a reserve account on the date the interest was actually paid, but after July 1, 1928, the reserve account was charged to loss and gain semi-annually instead of monthly. This was substantially the method used by the predecessor Peoples State Bank. The Wayne County & Home Savings Bank handled this category on a receipts and disbursements basis.

The result was, that for the first taxable period here involved, items of income from mortgages and bonds were included which were not due until some time in January, 1929, and interest and discount items on notes were included which were not due until January, 1929, or later. Likewise, large amounts of interest paid on savings deposits in 1928 were not charged off and hence were not deducted until 1929.

For example, in the case of interest on mortgages the Wayne County & Home Savings Bank had already accounted in January, 1928, for all the interest collectible in February of that year so that in this category the taxpayer's return showed eleven months' interest during the 10½ months' period. Peoples State Bank having kept its mortgages on a cash basis, taxpayer reported as to the mortgages taken over from it 11½ months of income during the 10½ months period.

Without further detail, taxpayer claimed to have reported improperly $607,263.89 in income and $257,446.13 for expenses for the 10½ months in 1928 because of the method of accounting followed. The amounts are undisputed and resulted in a claim of overpayment of $88,940.00 for the 9½ months taxable period in 1928. The 1929 return was made under the same system of accounting, but since it had been uniformly and consecutively applied to the two taxable periods, the income reported but not re-

ceived or fully earned, tended to offset the income received but already reported; and the expenses paid out ,but not deducted exactly offset the expenses deducted but already paid out. The result was that the claim for refund for 1929 was materially less than that for 1928, or only $11,578.38.

Appellant contends that only two bookkeeping methods are recognized in reporting income taxes, namely, the "cash" and "accrual" systems (See Hygienic Products Co. v. Comr, 6 Cir., 111 F.2d 330, 331 and cited cases); that the system outlined as to these four categories was a hybrid or mongrel system which did not reflect true income or expense; that the books were kept on a hundred percent cash system except for these four categories; and that it was therefore mandatory upon the Commissioner to readjust the method of accounting to conform to the cash system.

But both the Commissioner and the court failed to concur in the taxpayer's contention that its books were kept predominantly upon a cash basis. They each held that appellant had failed so to show and they were justified in so finding. Although numerically the individual accounts were preponderantly on a cash basis, the income therefrom was negligible. Of taxpayer's gross income of $11,490,809.93 in the 1928 taxable period, the evidence disclosed that $10,792,898.27, or around 94%, was included in the disputed categories. For 1929 the gross income was $13,639,865.87; and the income included in the disputed categories which the taxpayer contends must be changed to a cash basis, aggregated $12,911,150.70, or nearly 95%.

In any event, the taxpayer's failure to keep its accounts on either the cash or accrual basis as required by the statutory provisions, does not, within itself, compel a resort to the cash basis with a resulting verdict for the taxpayer. Such a situation no more suggests a change of the taxpayer's method of accounting to the cash basis than to the accrual basis. The Commissioner and the court both found upon sufficient evidence that the taxpayer's mongrel or hybrid system of keeping its accounts was patterned after that of the larger of its predecessor companies and was also employed by numerous other banks which were later absorbed by the taxpayer. The purpose was to continue as nearly as possible the accounting method used by the taxpayer's predecessor banks and to give continuity thereto.

If for any reason it desired to change the basis of reporting its income for either period involved it should have secured the consent of the Commissioner before the periods expired for filing its returns, as provided in Article 322 of Treasury Regulation 74, promulgated under the Revenue Act of 1928. This, it did not do, and the question whether it was not foreclosed from seeking such change afterwards is at least debatable.

However, the taxpayer based its claims for refund upon substantially the same contention, namely, that the cash system should have been used. The claims were denied by the Commissioner because "no proof has been submitted in support of the contention that the cash receipts and disbursements basis more nearly reflects the income than the method employed by the taxpayer, * * *."

The controlling consideration for this holding, as stated by the Commissioner himself, was Section 41 of the Revenue Act of 1928, ch. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Code, § 41, which incorporates the general rule as to methods of accounting, to wit:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period * * * in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not *clearly reflect the income,* the computation shall be made in accordance with such method *as in the opinion of the Commissioner does clearly reflect the income.* * * *" (Italics ours.)

The vital question, as we read Section 41, is, not whether the tax might be computed differently under the cash receipts and disbursements method, reaching a theoretical consistency as to all accounts, but whether so computed it would more "clearly reflect the income." The taxpayer is under the burden not only of showing, that a different amount would result from the change in method, which would demonstrate an overpayment of its taxes, but that the cash basis would more "clearly reflect the income." This is an administrative problem left by the statute to be determined "in the opinion of the Commissioner."

544

Lucas v. Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848. That official has a broad administrative discretion in determining the question and it is beyond the power of the courts to overturn his decision unless the evidence clearly shows that he has abused his discretion. The taxpayer has failed to carry the burden of showing that the Commissioner acted arbitrarily upon any fair view of the facts. See Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 562, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 507, 53 S.Ct. 413, 77 L.Ed. 921; Wells v. Moore, 6 Cir., 94 F.2d 108, 111.

█ It is urged that items of interest on loans and discounts, on mortgages, and on securities other than Government obligations, and carried upon the taxpayer's books, were not as a matter of fact income at all as the term is defined in Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570, because they were not earned during the taxable periods involved. But these items were in fact income, if not for the period for which they were returned, at least for some period, and the fact, if it is a fact, that they were improvidently returned, does not refute the holding of the Commissioner that the cash method of accounting which the taxpayer sought to employ was not shown to clearly reflect income.

As was said in Pacific National Co. v. Welch, 304 U.S. 191, 194, 58 S.Ct. 857, 858, 82 L.Ed. 1282: "Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns [§ 53(a), 26 U.S. C.A. Int.Rev.Code § 53(a) ] to include the period allowed for recovering overpayments [§ 322(b), 26 U.S.C.A. Int.Rev.Acts, page 436]. There is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method."

The judgment of the District Court is affirmed.