FRANKLIN COUNTY DISTILLING CO.,
Inc., v. COMMISSIONER OF IN-
TERNAL REVENUE.

No. 8845.

Circuit Court of Appeals, Sixth Circuit.

Feb. 12, 1942.

Elden McFarland, of Washington, D. C. (Ike Lanier, of Cincinnati, Ohio, on the brief), for petitioner.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., and George E. Ray, of Boston, Mass., on the brief), for respondent.

Before SIMONS, MARTIN, and Mc-ALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

The petitioner, a corporation engaged in distilling, selling, bottling and warehousing whiskey, has sought review of the determi-

nation by the Board of Tax Appeals of a deficiency of $9,154.70 in income tax for 1935 and of $3,329.60 in excess profits tax for the same year.

The petitioner kept its accounts on an accrual basis. The questions are whether the petitioner should include in its accrued income, *in the year of sale*, (1) amounts which purchasers of whiskey agreed by the documents of sale to pay petitioner, upon withdrawal of the whiskey from warehouses where stored, in reimbursement of the prior payment by petitioner of the Kentucky whiskey-production tax, and (2) amounts which purchasers of whiskey agreed to pay to petitioner as storage charges.

From commencement of its operations on March 1, 1935, to the end of the year, petitioner distilled more than one million and a half gallons of whiskey, upon which it paid $82,404.91 to the Commonwealth of Kentucky as a distilled spirits excise tax, commonly called a production tax, imposed at the rate of five cents per proof gallon. Kentucky Statutes, Sec. 4214a-13. The petitioner charged to its production costs the Kentucky production taxes which it paid.

During 1935, petitioner's gross sales of whiskey exceeded one million dollars in amount. The invoices covering a small proportion of these sales specifically included the amounts of the state production taxes paid by petitioner. In its 1935 income tax return, such production taxes were included by petitioner and reported in the total of its gross sales and are, therefore, no part of the subject matter of this litigation.

The bulk of petitioner's sales during 1935 and all of its sales involved in this controversy, however, were made under invoices bearing the rubber-stamped statement: "When this whiskey is withdrawn from our distillery bonded warehouse, the state manufacturing excise tax of · five cents per gallon is due and payable." In its income tax return for 1935, the petitioner reported the sales price of all whiskey sold under such invoices; but excluded from the sales price any amounts representing reimbursement to it of the Kentucky production taxes which it had paid, although no whiskey could be withdrawn from the warehouse by a buyer unless he paid at the time of withdrawal the full amount of the Kentucky production tax, which would, of course, result in the reimbursement of petitioner.

Payment of the amount of the invoice price was generally deferred and most sales of the whiskey were made at $40 per barrel, of which five dollars was paid in cash and the unpaid balance was evidenced by a promissory note.

In such instances, the whiskey was not delivered to the purchasers, but warehouse receipts listing barrel numbers were issued and held as collateral for the unpaid portion of the purchase price. When the promissory notes were paid, the warehouse receipts were delivered to the purchaser in negotiable or non-negotiable form, as desired. Generally, the purchaser requested negotiable warehouse receipts. Much of the petitioner's whiskey was sold to brokers. Many of the warehouse receipts were traded in on the open market, and the petitioner often lost knowledge of the identity of the holders. In its credit arrangements with banks, the petitioner freely pledged the warehouse receipts in its possession. Indeed, on the last day of 1935, petitioner had outstanding pledged receipts for 7,323 barrels of its total inventory of 11,752 barrels of whiskey as collateral for borrowings totaling $191,561.37. At the end of 1935, the general ledger of the petitioner reflected that more than $100,000 was due it from the makers of promissory notes secured by warehouse receipts.

The form of warehouse receipt used by the petitioner made no specific reference to the Kentucky production tax, until the fall of 1935 when a form was prepared and used which recited that the whiskey covered by the warehouse receipt was "deliverable only upon (a) the surrender of this receipt, and (b) the repayment to us of any taxes, Federal or State, of any description, including any Kentucky State production tax which may be now or hereafter imposed upon said whiskey or upon us as producers thereof, and (c) the payment to us of the United States Government taxes, and all other taxes and charges of every character and description assessed against or that may constitute a lien upon said whiskey, and all licenses and other taxes that are now or hereafter may be imposed upon us because of the manufacturing, storing, warehousing, withdrawing, bottling, or other handling of the aforesaid whiskey, and (d) the payment to us of all unpaid storage charges and such other legal charges as may hereafter accrue in connection with the withdrawal and delivery of the whiskey."

In obtaining bank loans, petitioner submitted monthly financial reports in which the amount of the production tax paid by it on whiskey which had not been withdrawn from warehouses was shown on a balance sheet under assets as "Other Assets" and under liabilities as "Deferred"; but this information did not appear on any of petitioner's books. An explanatory paragraph of the report of examination for 1935, prepared for petitioner by a firm of Certified Public Accountants, stated: "There has been accrued on the records of the company against holders of warehouse receipts at December 31, 1935, an amount of $47,699.39 representing the Kentucky five cents per gallon production tax. The company had paid this tax and included it in their production costs. According to the terms of warehouse receipts the purchasers thereof agree to pay this tax in addition to warehousing charges, etc., but by mutual agreement between the parties to the contract, payment therefor has been deferred until the whiskey is withdrawn."

The petitioner included as income, both on its books and on its income tax return, the sum of $9,722.15 as accrued storage charges on December 31, 1935, and made no claim for refund in respect of such until February 23, 1939.

In adjusting the income of the petitioner for 1935 to reflect the accrual of the Kentucky production tax assumed by the purchasers, the Commissioner of Internal Revenue ruled that "there can be no segregation whereby a part of the total sale price (including storage charges and taxes) can be set aside and reported at some future or problematical date," inasmuch as such method would contravene the provision of Article 41-2 of Regulation 86, which provides that "a method of accounting will not, however, be regarded as clearly reflecting income unless all items of gross income and all deductions are treated with reasonable consistency."

The Board of Tax Appeals upheld the Commissioner. K. Taylor Distilling Co. v. Com'r, 42 B.T.A. 7. In analyzing the controversy, the board said:

"When the whiskey was sold, whether for immediate delivery or upon a warehouse receipt, the consideration invariably included the amount identified as the exact equivalent of the amount which petitioner had been required to pay as the production tax. Petitioner as the producer was alone

subject to this tax. When it paid the tax, either directly or by credit against its advance deposit, the tax obligation was discharged, and to speak of the amount thereafter as a tax was but a convenience. Between seller and buyer it was merely a factor of the sale price. Thus it was among petitioner's accrued receipts equally with the other elements of the sale price which petitioner was to receive and the purchaser or his assignee or successor was to pay. To omit it as an accrued item while including the rest of the unpaid price and deducting the taxes as an item of cost would be a distortion rather than a clear reflection of income.

"There was in petitioner an enforceable right to receive the contract price protected by the withheld warehouse receipt and collectible from the person, regardless of identity, who presented the receipt and took delivery. Whether such person was unknown to petitioner was of no importance in respect of the accrual of the elements of the sale price.

"The doubt as to whether the amount would ever be received is no more than the doubt inherent in every such market transaction. It does not affect the accrual of the fixed price when the sale is made even though it may be necessary or proper to make an adjustment in a later year if things turn out differently from the supposition upon which the accrual was made. Spring City Foundry Co. v. Commissioner, 292 U.S. 182 [54 S.Ct. 644, 78 L.Ed. 1200]. This is not a case where the amount in all reasonable likelihood will never be received. The respondent's [Commissioner's] determination must be sustained.

"2. The same reasoning requires the denial of petitioner's contention that the storage charges which it makes for holding the whiskey until the warehouse receipt is presented and the whiskey withdrawn should not be accrued until delivery is made. Such charges are at a fixed and definite rate. Each year the accrued but unpaid storage charges are ascertainable. The petitioner accrues them on its books and properly included the amount of such accrual on its tax return. It is not entitled to have this item changed."

This reasoning is logical, but a more extended discussion seems desirable in view of the earnest and ingenious insistence of the petitioner that the board erred in its application of legal principles. The petitioner contends that the sum ($47,699.39)

paid by it during 1935 to cover the Kentucky production tax should not be accrued in its 1935 income, for the reasons that (1) the amount was not received by petitioner in 1935; (2) the right to its receipt was conditional; (3) the amount to be received was unliquidated, being conditioned on the happening of future events; and (4) there was reasonable probability in 1935 that a large part of such sum would never be paid by purchasers of the whiskey.

The petitioner quotes and stresses heavily the expression of this court in Commissioner of Internal Revenue v. R. J. Darnell, Inc., 6 Cir., 60 F.2d 82, 84: "If income has neither actually been received during the taxable year, nor the right to its receipt been definitely fixed during that year, as to both the existence of an obligation on the part of the payor and the amount to be paid, such income is properly to be allocated only to that year in which it was in fact received or in which the right to receipt became fixed and liquidated."

But this language was used in a case where the holding was that a contract made in 1920 for the sale of a sawmill and its equipment, including an agreement by the seller to deliver quantities of logs, was entire and indivisible; and that, therefore, the taxable profit to the seller was not definitely ascertainable until 1923, when the contract was fully performed. The instant case involves sales definitely closed in the year during which the production tax was paid by the petitioner. The amount of the production tax was accurately ascertained in that year. The time for reimbursement of petitioner for its payment of the production tax in each instance was merely deferred to the time when the whiskey should be withdrawn from the warehouse by the buyer or his assignee. In some instances, the holders of warehouse receipts passed this obligation of payment along to successors in title. But the obligation to reimburse petitioner remained fixed on the holder of the title to the merchandise. The factual basis upon which the decision in the Darnell case rested was that the taxable profit could not, under the terms of the contract, have been definitely ascertained during the year in which the agreement was consummated.

Nor must the language used by the court in the paragraph preceding that quoted by the petitioner be ignored (op. 83 of 60 F.2d): "It must be conceded that if a corporate taxpayer receives, or accrues upon its books, definitely ascertained earnings, under a claim of right and without restriction as to future disposition, it is taxable thereon even though it may still be claimed that the taxpayer was not then lawfully entitled to receive the money, and even though it may thereafter be adjudged liable to restore the whole or a part of the amount received." The opinion writer cited North American Oil v. Burnet, Commissioner, 286 U.S. 417, 423, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197, in which Mr. Justice Brandeis stated: "Nor is it material, for the purposes of this case, whether the company's return was filed on the cash receipts and disbursements basis, or on the accrual basis. In neither event was it taxable in 1916 on account of income which it had not yet received and which it might never receive."

Tax cases must be reasoned through with practicality. It would seem almost certain that the owners of all warehoused whiskey upon which petitioner paid the production tax in 1935 will within eight years present their warehouse receipts and pay all required charges, including the production tax and the storage charges, in order to withdraw their whiskey from the warehouse. The excess value of the whiskey over the production tax and all other liens would seem, for all practical purposes, to assure such action. The average sales price for a forty-eight-and-one-half gallon barrel of whiskey, sold by petitioner in 1935, was approximately $40, while the Kentucky production tax was only five cents per gallon. Furthermore, it is reasonable to assume that original holders or subsequent purchasers of warehouse receipts would be familiar with the requirement of Section 2900 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 2900, for the withdrawal of distilled spirits from bonded warehouses within eight years from the date of original entry therein, and with Section 2879(d) authorizing the collector to proceed to collect the withdrawal tax by distraint if the distilled spirits are not withdrawn within the specified eight years. Surely, holders of warehouse receipts will avoid the disaster which would result to them from distraint.

■ Where income tax returns are made by the taxpayer on an accrual basis, there need not be certainty, but only reasonable accuracy, in calculating an amount to be received, in order to bring that amount within taxable income. Continental Tie &

Lumber Co. v. United States, 286 U.S. 290, 296, 297, 52 S.Ct. 529, 76 L.Ed. 1111.

Whether a taxpayer is entitled to or bound to accrue an item of income in a certain year depends upon whether there was justification for a reasonable expectation that payment of the item would be made in due course. Automobile Insurance Co. v. Commissioner of Internal Revenue, 2 Cir., 72 F.2d 265, 267; Commissioner of Internal Revenue v. Terre Haute Electric Co., 7 Cir., 67 F.2d 697; Schoellkopf Aniline & Chemical Works v. United States, Ct.Cl., 3 F.Supp. 417; Brunton v. Commissioner of Internal Revenue, 9 Cir., 42 F.2d 81, 83; Peyton DuPont Securities Co. v. Commissioner of Internal Revenue, 2 Cir., 66 F.2d 718, 722.

In Spring City Foundry Co. v. Commissioner of Internal Revenue, 292 U.S. 182, 184, 185, 54 S.Ct. 644, 645, 78 L.Ed. 1200, Chief Justice Hughes said: "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." Compare United States v. Amalgamated Sugar Co., 10 Cir., 72 F.2d 755, 759; United States v. Utah-Idaho Sugar Co., 9 Cir., 96 F.2d 756, 758.

When accounts are kept on an accrual basis, income must be accounted for in the year in which realized, although not then actually received; and deductions should be taken in the year in which the deductible items are incurred. Brown v. Helvering, 291 U.S. 193, 199, 54 S.Ct. 356, 78 L.Ed. 725. Compare American National Company v. United States, 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347.

The Revenue Act of 1934, Ch. 277, 48 Stat. 680, Title 26, Sec. 41, U.S.C.A. Int. Rev.Code, provides in Section 41 that "the net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, *or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."* (Italics ours.)

For recognition by the Supreme Court, under an earlier act, of the right of the Commissioner to exercise discretion, see Aluminum Castings Co. v. Routzahn, 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234.

In Brown v. Helvering, supra, at page 203 of 291 U.S., at page 360 of 54 S.Ct., 78 L.Ed. 725, the court said: "Moreover, the method employed by the taxpayer is never conclusive. If in the opinion of the Commissioner it does not clearly reflect the income, 'the computation shall be made upon such basis and in such manner' as will, in his opinion, do so. United States v. Anderson, 269 U.S. 422, 439, 46 S.Ct. 131, 70 L.Ed. 347; Lucas v. American Code Co., 280 U.S. 445, 449, 50 S.Ct. 202, 74 L.Ed. 538 [67 A.L.R. 1010]; Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 120, 50 S.Ct. 273, 74 L.Ed. 733; * * *."

Inasmuch as the accrual method of accounting adopted by the taxpayer was not "regularly employed," in that the accrued items of production tax payments passed along for assumption by purchasers of the whiskey sold during 1935 were not included in petitioner's income tax return, the Commissioner of Internal Revenue was clearly privileged to make his computation according to such method as in his opinion would clearly reflect the income. The petitioner has no legal basis for its opposition to such procedure.

In our judgment, the position of the petitioner is not sustained by Commissioner of Internal Revenue v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85, so urgently pressed as controlling authority in its behalf; for, while in that case it was held that under a paving contract certain percentages retained to guarantee the maintenance of pavements constructed by a contractor were taxable as income to him in the year when the money was actually paid, the fact was "not disputed that the amount of the retained percentages might be materially reduced in the event of necessary repairs or the subsequent disclosure of a failure to comply with the specifications." The distinct statement was made that "until the expiration of the period of guaranty the obligations of the several municipalities remained only a contingent promise to pay." Here, the amount of the production tax was definitely ascertained in the taxable year in

which it was paid by the petitioner, and the purchasers of whiskey, upon which the production tax had been paid, were obligated to pay that exact amount whenever either they or their assignees should withdraw the whiskey from the warehouse.

Moreover, we fail to find comfort for the petitioner in the decision of this court in Hygienic Products Co. v. Commissioner of Internal Revenue, 6 Cir., 111 F.2d 330, 331. It was there held that unless there is conformity to either the cash or accrual method in the accounting system of the taxpayer, the Commissioner may make such corrections as are necessary to reflect the true income. Judge Arant said: "The finding of the Commissioner and the Board that petitioner's books were kept on the accrual basis is conclusive here, and it follows that credits for these taxes should have been claimed in the years in which they accrued."

■ There can be no quarrel with the accuracy of the statement in H. Liebes & Co. v. Commissioner, 9 Cir., 90 F.2d 932, 938, that "income accrues to a taxpayer, when there arises to him a fixed or unconditional right to receive it, if there is a reasonable expectancy that the right will be converted into money or its equivalent"; nor with similar doctrine applied in a later case from the same circuit, Commissioner of Internal Revenue v. Lyon, 9 Cir., 97 F.2d 70.

The non sequitur in petitioner's argument flows from the fact that the record here discloses that petitioner has even more than a reasonable expectancy of converting its fixed right into money.

Being plainly differentiable in essential facts, the authorities cited by petitioner, as listed below, fail to support its contention. London Butte Gold Mines Co. v. Commissioner of Internal Revenue, 10 Cir., 116 F.2d 478; Commissioner of Internal Revenue v. Edwards Drilling Co., 5 Cir., 95 F.2d 719; Bauer Bros. Co. v. Commissioner of Internal Revenue, 6 Cir., 46 F.2d 874; Lucas, Commissioner of Internal Revenue, v. North Texas Co., 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; Guaranty Trust Co., Executor, v. Commissioner of Internal Revenue, 303 U.S. 493, 58 S.Ct. 673, 82 L.Ed. 975.

No merit is found in the argument that petitioner should not be required to include as income for 1935 fixed storage charges of ten cents per barrel, per month, payable by purchasers upon withdrawal of whiskey. These storage charges were included by the petitioner on its income tax return for 1935 and on its books as well, and no claim for refund was filed until February 23, 1939.

■ The items clearly constituted income to the taxpayer during 1935 and were properly included as such in computation by the Commissioner. See Spring City Foundry Co. v. Commissioner of Internal Revenue, supra; Brown v. Helvering, supra; Continental Tie, etc., Co., v. United States, supra; Elmwood Corporation v. United States, 5 Cir., 107 F.2d 111, 112, certiorari denied, 309 U.S. 675, 60 S.Ct. 713, 84 L.Ed. 1020.

■ In the last cited case, the Circuit Court of Appeals aptly said: "The taxpayer, having kept its books and returned its income on the accrual basis, could not, after the time for filing returns had expired, change from that basis to some other and thereby depart from the method it had consistently employed. To allow change at will from one method of accounting and computation to another would require recomputation and readjustment of tax liability, and would result in confusion, delay, and inconvenience, and 'impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns * * *.' Pacific National Co. v. Welch, 304 U.S. 191, 58 S.Ct. 857, 858, 82 L.Ed. 1282 * * *. The taxpayer was under no obligation to pay a tax on income it might never receive. * * * But having taken position and made an election it could not, after the time for filing returns had expired, change position in view of later experiences and demand tax recomputation on a new basis." This is sound doctrine.

The order of the Board of Tax Appeals is affirmed..