**KENTUCKY COLOR & CHEMICAL CO., Inc. v. GLENN.**

Civ. 1392.

United States District Court
W. D. Kentucky, at Louisville.

Dec. 9, 1949.

Robert E. Hatton, Louisville, Kentucky, for plaintiff.

Theron Lamar Caudle, Assistant Attorney, Andrew D. Sharpe, Robert R. Reynolds, Jr., Special Assistants to the Attorney General, David C. Walls, United States Attorney, Louisville, Kentucky, for defendant.

SHELBOURNE, Chief Judge.

1. The plaintiff, the Kentucky Color and Chemical Company, is and has been during all the time herein involved, a Kentucky corporation with its principal office located at 600 North 34th Street in the City of Louisville, with power to sue and to be sued. It has, during all the time herein involved, been engaged in the business of manufacturing and selling at wholesale commercial colors, chemicals and pigments.

2. It operates and during all the time herein involved has operated and kept its books of account upon the basis of a fiscal year beginning November 1st and ending

October 31st of the following year. For the year in question, it included in gross sales certain accounts receivable (totaling $132,895.39 out of a total gross sales of $1,841,919.50.) All other items of income such as "interest", "rents" and "other income" were reported only in the year in which received. Thus only 7 percent of the gross sales of $1,841,919.50 was treated on the accrual basis.

The reported costs of goods sold were $1,587,844.37 and of this total $29,454.33 was treated on the accrual basis. The items accrued were commissions and bonuses, $5,144.34, floor tax $2,000, and accounts payable $22,309.99, and these items constitute 1.8 percent of the total costs of goods sold. The floor tax was accrued in this year only and was occasioned by the failure of the taxing authorities to supply the proper tax forms during the taxpayer's fiscal year.

The taxpayer reported "other costs per books" in the total of $199,010.43 and of this sum $4,334.60 was accrued. The accrued items were fire insurance (prorated premiums) $3,097.84 and tar $1,236.76 and these two items amounted to 2.1 percent of the other costs per books.

Beginning and ending inventories were used only because the tax form supplied by the Government required their use.

3. Plaintiff duly filed its income and excess profits tax returns for the year in question and reported a net income of $153,414.93 upon which income tax of $35,457.28 was assessed and an excess profits tax of $43,441.26 was assessed. These amounts assessed were duly paid.

In computing its excess profits tax plaintiff used, as was its custom, the invested capital basis reporting an invested capital of $902,262.60. In auditing plaintiff's return the Commissioner of Internal Revenue increased the invested capital by the addition of three amounts not now in issue totaling $5,679.21 and decreased the invested capital by $87,840.09 representing additional income tax for the year ended October 31, 1940 of $956.51, declared value excess profits tax for the year ended October 31, 1941 of $8,369.89; income and surtax for the fiscal year ended October 31, 1941 of $55,053.21; and excess profits tax for the fiscal year ended October 31, 1941 of $23,460.48.

As a result of these adjustments, plaintiff's invested capital was decreased to $820,101.72 which produced an overassessment of income tax in the amount of $1,744.42 and a deficiency assessment of excess profits tax of $4,672.06.

As a result of these adjustments plaintiff paid to the defendant on November 2, 1944, the sum of $3,429.01, consisting of $2,927.34 tax and $50.67 interest.

4. On October 17, 1946, the plaintiff duly filed with the defendant a claim for refund in the amount of $3,429.01 plus interest.

By registered letter dated August 26, 1947, the plaintiff was advised by the Commissioner of Internal Revenue that the claim for refund had been disallowed in full.

5. The cash basis method of accounting and tax reporting employed by the plaintiff has been consistently followed by it for twenty years.

6. Insofar as it is possible, the plaintiff has attempted to and did report upon the basis of cash receipts and disbursements and not on the accrual basis. The only deviations have been extremely minor. Seven percent of gross sales have not been reported in the year in which received. Plaintiff has reported all deductions only in the year in which paid except for 1.8 percent of the total for "costs of goods sold" and 2.1 percent of "other costs." These items were of such a nature, depending as they were on net profits of the plaintiff or on sales during the last month of the year, that they could not be computed before the end of the year.

7. The plaintiff's method of accounting, insofar as relates to the matter in issue, has not been questioned by the Commissioner of Internal Revenue prior to the year in question.

8. The method of accounting and reporting employed by the plaintiff is predominantly the cash receipts and disbursements method and the deviations are so

minor as not to change that which is so predominantly cash into an accrual method.

9. The method of accounting and reporting employed by the plaintiff does clearly reflect its income, and returns filed by the plaintiff on this basis apparently have been accepted by the Commissioner in all past years.

10. The method of accounting used by the taxpayer did not result in its taking a single deduction in two years, thus every item deducted was deducted in only one year.

### Conclusions of Law.

I. This Court has jurisdiction of the parties and the subject matter. Title 26, Section 322, Title 28, Section 1346, formerly Title 28, Section 41(20).

II. "Tax cases must be reasoned through with practicality." Judge Martin in Franklin County Distilling Company v. Commissioner, 6 Cir., 125 F.2d 800, 803.

The first question to be determined is—did the plaintiff taxpayer, using the invested capital method of computing its excess profits tax, keep its books on the accrual or cash basis of accounting.

The general rule provided by Section 41 of Title 26 U.S.C.A. is as follows— "The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income."

In Osterloh v. Lucas, 6 Cir., 37 F.2d 277, in construing the above statute, the Court said that the statute required only that the taxpayer's books shall be kept fairly and honestly.

In Huntington Securities Corporation v. Busey, 6 Cir., 112 F.2d 368, 370, the term "clearly" within this section is defined as "plainly, honestly, straightfor-wardly and frankly", but does not mean "accurately", which in its ordinary use means precisely, exactly, correctly, without error or defect, and in Morris-Poston Coal Company v. Commissioner of Internal Revenue, 6 Cir., 42 F.2d 620, it is held that under the revenue law the selection of the system of keeping books is primarily for the taxpayer.

The Board of Tax Appeals in M. D. Rowe, Petitioner, v. Commissioner, 7 B.T. A., 903, held that minor deviations do not cause books to be placed on the accrual basis to reflect true income and that minor deviations from the cash receipts and disbursements basis would not authorize treatment of the system of bookkeeping as on the accrual basis.

Judge Hicks, speaking for the Sixth Circuit in Schram v. United States, 118 F.2d 541 said at page 543—"The vital question, as we read Section 41, is, not whether the tax might be computed differently under the cash receipts and disbursements method, reaching a theoretical consistency as to all accounts, but whether so computed it would more 'clearly reflect the income.'"

In the case of Osterloh v. Lucas, supra, the Court said 37 F.2d at page 278—"The case turns largely upon what is meant by the requirement that the method of accounting shall clearly reflect the income. If this requirement is absolute, it is safe to say that books kept on the basis of cash received and disbursed will rarely, if ever, reflect the true income, because nearly always at the end of a tax year accounts due the taxpayer will remain uncollected and some of his own obligations will remain unpaid. But we do not think that any such literal construction was contemplated. In our opinion, all that is meant is that the books shall be kept fairly and honestly; and when so kept they reflect the true income of the taxpayer within the meaning of the law. In other words, the books are controlling, unless there has been an attempt of some sort to evade the tax. This construction may work to the disadvantage of the taxpayer or the government at times, but if followed out consistently and honestly year after year the result in the end will approx-

imate equality as nearly as we can hope for in the administration of a revenue law."

The case of Hygienic Products Company v. Commissioner, 6 Cir., 111 F.2d 330 is not controlling here. In that case, the taxpayer did not claim to be on the cash receipts and disbursements method. The taxpayer stated he was on the accrual basis. It kept its accounts payable by either accruing all items or treating all items on the cash basis.

■ III. Any system of bookkeeping that fairly and honestly reports ninety three percent of the gross sales and ninety eight and two tenths percent of disbursements meets the standard of the tests requiring the method of accounting to reflect clearly the income of the taxpayer.

### Conclusion.

It having been found that the taxpayer reported its income on the cash receipts and disbursements method of accounting, the Commissioner was in error in requiring the plaintiff to accrue taxes, thereby reducing the invested capital by some $87,-840.

It is therefore concluded that plaintiff is entitled to the recovery sought in the petition.