**THOMPSON–KING–TATE, INC.,**
**Plaintiff**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 1290.**

United States District Court
E. D. Kentucky,
at Lexington.

July 22, 1960,

Gess, Mattingly, Saunier & Atchison, Wm. B. Gess, Jack F. Mattingly, Lexington, Ky., for plaintiff.

Jean L. Auxier, U. S. Atty., Lexington, Ky., Herbert L. Awe, Atty., Dept. of Justice, Washington, D. C., for defendant.

HIRAM CHURCH FORD, Chief Judge.

This is an action for the recovery of income taxes with interest alleged to have been erroneously and illegally assessed and collected from the plaintiff taxpayer, Thompson-King-Tate, Inc. Jurisdiction is conferred by 28 U.S.C.A. § 1346(a).

The question presented is whether the gain resulting from the completion by the taxpayer of a long-term construction subcontract should have been reported for income tax purposes in the year 1953, as claimed by the Government, or in the year 1955, as now claimed by the taxpayer.

The basis of the taxpayer's claim for refund is that since the profit which the Commissioner required to be reported for 1953 included profit derived from a long-term housing contract which was not finally accepted as complete until 1955, the commissioner erred in requiring the profit to be reported as of 1953 rather than as of 1955.

The case is submitted upon an agreed stipulation of facts from which the following statement of the case is derived.

On March 11, 1952, the Richmond Kentucky Municipal Housing Commission, under a loan contract with the United States Public Housing Administration, entered into a written contract with Perkins and Gray Construction Company, as prime contractor, for the construction of a low rent housing project.

On May 15, 1952, Perkins and Gray by written contract sublet to the taxpayer the work described in Division 23 of the "Supplemental Specifications and Contract Documents" prepared by the architects for the project. The work so sublet included "Paving streets, parking areas, catch basins, garbage platforms, splash blocks, side walks, terrace steps with hand-rails, (new fence and clothes line posts excluded)."

Thereafter, Perkins and Gray Construction Company and the taxpayer, on November 28, 1952, entered into a supplemental oral contract, per revised plans for the project dated November 11, 1952, specifying extras and additions consisting of the removal of trench rock for utility lines, the construction of additional sidewalks, terrace steps, etc. (Stipulation par. No. 12.)

The price agreed to be paid to the plaintiff as subcontractor for the completion of the initial contract was $106,110 to which was added the additional sum of $27,508.42 for the extra work to be performed under the supplemental oral agreement, making the total contract price $133,968.42.

The plaintiff, Thompson-King-Tate, Inc., completed its initial contract and supplemental oral agreement in October 1953 with the exception of several adjustments made in 1954 to satisfy the Housing Commission and without charge.

Although it appears from the Stipulation that it was specifically agreed that Perkins and Gray would not be required to accept and pay for the work of the plaintiff, Thompson-King-Tate, Inc., until the entire prime contract for the general construction work on the project was finally completed and accepted, nevertheless it also appears from the Stipulation that in 1953 the sum of $106,110, the initial contract price, was paid to the plaintiff subcontractor, excepting only 10% thereof which was an agreed retainage which was paid to the taxpayer on May 20, 1954. However, payment for extra work under the supplemental oral agreement in the sum of $27,508.42, adjusted by a reduction of $350, was not made to the taxpayer until April 19, 1955.

The taxpayer in its 1953 return reported gain on the original contract of $19,400.20 ($106,110 less $86,709.80), and in its 1954 return reported a gain from the extra work of $26,447.09 ($27,858.42 less $1,411.33). On the basis of his determination that the subcontract was completed in 1953, the Commissioner by deficiency assessment required that the entire gain of $45,847.29 (total contract price of $133,968.42 less total cost of $88,121.13) be included in the taxpayer's return for 1953.

The plaintiff taxpayer paid the deficiency assessment and filed timely claim for refund for the recovery of which it instituted this action.

The records of the Public Housing Administration and of the prime contractor indicate substantial completion of the project as of October 20, 1953, and final acceptance on May 6, 1955.

The provisions of the Internal Revenue Code of 1939, as amended, which seem to be applicable here, are as follows:

"§ 41. General rule

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or

calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of the taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income * * *."

"§ 42. Period in which items of gross income included

"(a) General rule. The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period * * *."

Treasury Regulations 118, promulgated under the Internal Revenue Code of 1939, as amended, provide:

"§ 39.42–4 Long-term contracts

"(a) Income from long-term contracts is taxable for the period in which the income is determined, such determination depending upon the nature and terms of the particular contract. As used in this section, the term 'long-term contracts' means building, installation, or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon either of the following bases:

"(1) Gross income derived from such contracts may be reported upon the basis of percentage of completion. In such cases there should accompany the return certificates of architects or engineers showing the percentage of completion during the taxable year of the entire work to be performed under the contract. There should be deducted from such gross income all expenditures made during the taxable year on account of the contract, account being taken of the material and supplies on hand at the beginning and end of the taxable period for use in connection with the work under the contract but not yet so applied.

"(2) *Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so as to treat such income,* provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion." (Italics added.)

That the contract here involved was a long-term contract within the meaning of the above regulations is not disputed.

According to paragraph No. 10 of the Stipulation, "Taxpayer kept its books *and reported its income on the accrual basis*", and according to paragraph No. 11, it reported its gain or loss from long-term contracts on the completed contract basis. (Italics added.)

Relying heavily upon E. E. Black, Ltd. v. Alsup, 9 Cir., 211 F.2d 879, plaintiff urges that there must be both final completion and acceptance within a particular taxable year before a taxpayer may be either permitted or required to report taxable income from a long-term contract for such taxable year. I do not so interpret the above-quoted statutory requirements and Treasury Regulations 118 § 39.42–4.

In the present case, the taxpayer knew on March 16, 1954, when it filed its income tax return for 1953 that equitable adjustment of the subcontract price in accordance with the supplemental oral agreement to cover payment for extra

work performed in connection with completion of the subcontract would have to await processing of a final Change Order as provided in the prime contract and subcontract agreements. The so-called supplemental oral agreement appears to have been nothing more than a Change Order under the terms of § 10, Part II—General Specifications Division I, General Conditions of the prime contract, which was incorporated by reference in the subcontract.

Knowing that the Change Order was subject to further processing under the terms of the Subcontract, the taxpayer, nevertheless, struck a balance on its books with respect to the subcontract and reported a portion of the gain therefrom on its income tax return for 1953. The extra work in connection with the subcontract, all of which had been performed in 1953, as to which the price had been agreed upon, and which was included in the final bill sent the prime contractor in 1953, was not under the circumstances entitled to separate treatment for income tax purposes.

Conclusions of Law.

Since it appears that in 1953 the taxpayer voluntarily closed its books with respect to the initial subcontract and also took into account the expense incurred in the complete performance of the work required under the supplemental oral agreement, and reported its gain in its 1953 return, deferring report of the amount receivable on account of the supplemental oral agreement until its return filed in 1954, upon a fair view of the facts, it can not be said that the Commissioner abused his discretion in requiring the taxpayer to be consistent and report the entire gain under the overall subcontract upon its income tax return for 1953. Schram v. United States, 6 Cir., 118 F.2d 541. While the taxpayer originally might have withheld reporting any gain from the subcontract until the prime contract was finally accepted in 1955, it elected to do otherwise and should be bound by that election. Daley v. United States, 9 Cir., 243 F.2d 466. There is no claim that the

Commissioner's requirement that the entire gain be reported in 1953 did not clearly reflect the plaintiff's taxable income derived from the subcontract here involved. Schram v. United States, supra.

For the reasons indicated, let judgment be submitted for entry in conformity herewith.