THOMPSON–KING–TATE, INC., a Kentucky Corporation, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 14393.

United States Court of Appeals Sixth Circuit.

Dec. 11, 1961.

Jack F. Mattingly, Lexington, Ky., for plaintiff-appellant, William B. Gess, Gess, Mattingly, Saunier & Atchison, Lexington, Ky., on the brief.

Loring W. Post, Atty., Tax Div. U. S. Dept. of Justice, Washington, D. C., for defendant-appellee, Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Lloyd J. Keno, Attys., Dept. of Justice, Washington, D. C., Jean

L. Auxier, U. S. Atty., Lexington, Ky., on the brief.

Before MILLER, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Chief Judge.

The appellant taxpayer, Thompson-King-Tate, Inc., brought this action in the District Court to recover income taxes alleged to have been illegally assessed and collected from it for the year 1953. The question involved is whether the gain resulting from the completion by the taxpayer of a long-term construction subcontract was taxable income in the year 1953, as claimed by the Government, or in the year 1955, as claimed by the taxpayer.

The facts were stipulated by the parties. Included among them are the following.

■ The taxpayer was engaged in the business of excavating for and installing water and sewer lines, constructing streets, selling building materials, etc. It kept its books and reported its income on the accrual basis. It accounted for and reported its gain or loss from long-term contracts on the completed contract basis, as provided by Section 39.42–4, Regulations 118, Revenue Code of 1939.

On March 11, 1952, the Richmond Municipal Housing Commission (Kentucky) entered into a written contract with Perkins and Gray Construction Company, as prime contractor, for the general construction work of a low rent housing project No. Ky. 16–1, Richmond, Kentucky. Perkins and Gray, by written contract of May 15, 1952, sublet to taxpayer a portion of the construction of the project. On November 28, 1952, Perkins and Gray and the taxpayer entered into a supplemental oral contract, per revised plans for the project, dated November 11, 1952, specifying extras and additions consisting of the removal of trench rock for utility lines and the construction of additional sidewalks and terrace steps. The initial subcontract price was $106,-110.00: The supplemental oral contract price was $27,858.42, resulting in a total subcontract price of $133,968.42.

All work on the project was subject to the approval and acceptance thereof by the City of Richmond Municipal Housing Commission and by the Public Housing Administration, herein referred to as PHA. It was specifically agreed by the parties that Perkins and Gray would not be required to accept and pay for the work of the taxpayer until the entire Prime Contract for the general construction work on the project was finally and fully completed and accepted by the Housing Commission.

Several Change Orders were issued during the construction of the project, including Change Order No. G–12 dated December 7, 1954, concerning rock excavation in utility trenches, extra backfill, steps and sidewalks, which was approved by PHA on March 15, 1955.

The taxpayer completed its initial and supplemental contracts in October 1953. After the completion of the contracts, however, the taxpayer made several additions and adjustments in 1954, without charge, to satisfy the Housing Commission.

For the purpose of renting as many of the housing units as could be occupied, the Housing Commission in October 1953 took possession of a portion of the project and rented 53 of the 99 housing units in the project, even though all work was not complete or acceptable. On this date various phases of the job had not been finished, particularly the landscaping and installation of acoustical tile and the punch list of items. The installation of acoustical tile was completed in December 1953 but the punch list items were not completed until 1954.

As of March 10, 1954, certain items continued to be in dispute in the negotiations for a final acceptance of the project by the Housing Commission. The Housing Commission would not accept all of the work of the taxpayer until the adjustments and additions above referred to were made in 1954.

Representatives of the Housing Commission, Perkins and Gray, and the taxpayer had numerous conferences and discussions between March 1954 and April 1955 regarding the quality and quantity of the work performed, the replacements and corrections needed on the project and payment of the balances due therefor. On April 18, 1955, the Housing Commission and PHA expressed satisfaction with the work on the project and the adjusted account of the prime contractor, which included the account of the taxpayer. The replacements and corrections referred to were performed in 1954.

"Certificate of Completion—Part II," testifying to the fulfillment of all contract obligations, was executed on April 18, 1955. April 18, 1955, was the date of final approval and acceptance of the work on the project. On the same day a Certificate of Release was obtained by the Housing Commission from Perkins and Gray.

Perkins and Gray refused to accept, approve or pay for the work of the taxpayer until the Housing Commission had approved, accepted and paid for all work on the project. A major portion of the items in controversy, which partially caused the delay in the approval and acceptance of the project, involved the work performed by the taxpayer. On April 19, 1955, Perkins and Gray approved and accepted the work of the taxpayer and paid the balance due, as adjusted, therefor.

The taxpayer sent Perkins and Gray a final bill based on the total contract price of $133,968.42 on November 6, 1953. The initial contract price of $106,-110.00 was paid to taxpayer in 1953 except for 10% retainage, which was paid to taxpayer on May 20, 1954. Payment for extra work under the supplemental agreement was made on April 19, 1955, in the sum of $27,508.42, after being adjusted by a reduction of $350.00 in the contract price.

According to taxpayer's accounting records, the total cost of the contract was $88,121.13, of which $86,709.80 was paid in 1953. The balance of $1,411.33 was paid in 1954. The taxpayer reported $19,400.20 gain on the original contract ($106,110.00 less $86,709.80) in its 1953 return, and reported $26,447.09 gain on the extra work ($27,858.42 less $1,411.-33) in its 1954 return.

On the basis of his determination that taxpayer's entire contract was finally completed and accepted in 1953, the Commissioner included the entire gain of $45,847.29 (total contract price of $133,-968.42 less total cost of $88,121.13) in taxpayer's income for 1953. This ruling transferred the $26,447.09 profit on the long-term housing contract from the year 1954 to the year 1953. During the audit the taxpayer requested the Internal Revenue Agent making the audit to transfer the profit of $19,400.20 and $26,447.09, as reported in its returns for 1953 and 1954, respectively, to the taxpayer's 1955 taxable year, in which year taxpayer claims the contract was finally completed and accepted. After conferences between the taxpayer and officials of the Internal Revenue Service, a statutory notice of deficiency, including an income tax deficiency for the year 1953 in the sum of $30,732.71, was mailed to the taxpayer. This deficiency was assessed on the basis that the long-term housing contract was completed and accepted in 1953, and the gain therefrom was accordingly taxable in that year. Payment of said deficiency together with interest was made on April 8, 1957. Following a timely claim for refund, which was denied, this action was filed.

As a basis for recovery the taxpayer alleged that its accountant erroneously reported taxable income from the aforesaid contract for the years 1953 and 1954, but that since the long-term housing contract was completed and accepted in 1955, the entire profit thereon should have been included in taxpayer's income in 1955 rather than in 1953.

The District Judge pointed out that the record of the PHA and of the prime contractor indicated substantial completion of the project as of October 20, 1953, although final acceptance was delayed

until May 6, 1955; that the taxpayer knew in March 1954, when it filed its income tax return for 1953, that equitable adjustment of the subcontract price in accordance with the supplemental oral agreement to cover payment for extra work performed in connection with completion of the subcontract would have to await processing of a final Change Order; that, nevertheless, it struck a balance on its books with respect to the subcontract and reported a portion of the gain therefrom on its income tax return for 1953, and that the extra work which had been performed in 1953 and which was included in the final bill sent the prime contractor in 1953, was not under the circumstances entitled to separate treatment for income tax purposes. He sustained the Commissioner's ruling that the entire gain be included in the return for the year 1953, and dismissed the complaint. Thompson-King-Tate, Inc. v. United States, D.C., 185 F.Supp. 748.

On this review taxpayer contends that under Section 39.42–4, Regulations 118, Revenue Act of 1939, the entire gain was taxable in the year 1955, when the project was finally completed and accepted and final payment made in the sum of $27,508.42, after being adjusted by a reduction of $350.00 in the contract price. It is admitted that the project was substantially completed in October 1953 and that no work was performed under the subcontract in 1955.

The section of the Regulations referred to deals with income from long-term contracts, which are defined as building, installation or construction contracts covering a period in excess of one year from the date of execution of the contract to the date on which the contract is finally completed and accepted. It provides, "Persons whose income is derived in whole or in part from such contracts may, as to such income, prepare their returns upon either of the following bases: (1) Gross income derived from such contracts may be reported upon the basis of percentage of completion. * * *; (2) Gross income may be reported for the taxable year in which the contract is finally completed and accepted if the taxpayer elects as a consistent practice so as to treat such income, provided such method clearly reflects the net income. If this method is adopted there should be deducted from gross income all expenditures during the life of the contract which are properly allocated thereto, taking into consideration any material and supplies charged to the work under the contract but remaining on hand at the time of completion."

The Government contends that under the completed contract method of accounting, as authorized by the foregoing Regulation, income must be reported in the year in which the contract is substantially completed, even though some minor work may yet remain to be done. The Tax Court so held in Ehret-Day Co. v. Commissioner, 2 T.C. 25, decided in 1943, and in several subsequent memorandum decisions in 1954 and 1958.

On the other hand, the ruling of the Tax Court in the Ehret-Day case was expressly rejected by the Court of Appeals for the Ninth Circuit in E. E. Black, Limited, v. Alsup, 211 F.2d 879. In the opinion in that case it was pointed out that the Regulation provides that gross income may be reported for the taxable year in which the contract "is finally completed and accepted," and that substantial completion is not final completion and acceptance, as required by the Regulation. It said, "In short, we are of opinion that the Regulation should be taken as meaning what it plainly says, hence we believe that the Ehret-Day case was wrongly decided. The 'substantial completion' doctrine there applied tends merely to import into the tax law an unwarranted and undesirable uncertainty."

The Court of Appeals for the First Circuit has made a similar ruling in Rice, Barton & Fales v. Commissioner, 41 F.2d 339.

We are of the opinion that the Regulation must be construed according to its plain wording and that under it, substantial completion of a long-term construction contract is not the same as

final completion and acceptance, as provided by the Regulation. Since final completion and acceptance in the present case did not take place until 1955, taxpayer's income from the project in question was taxable in the year 1955 instead of 1953.

The District Judge also ruled that since the taxpayer reported its gain in its 1953 return, deferring report of the amount receivable on account of the supplemental oral agreement until its return filed in 1954, the Commissioner did not abuse his discretion in requiring the taxpayer to be consistent and report the entire gain under the overall subcontract in its return for 1953. The opinion says, "While the taxpayer originally might have withheld reporting any gain from the subcontract until the prime contract was finally accepted in 1955, it elected to do otherwise and should be bound by that election." [185 F.Supp. 751.]

If we are correct in our ruling that final completion and acceptance of the contract under the Regulation means what it says, rather than substantial completion, we are of the opinion that the District Judge's theory of election is not applicable.

■ We recognize that where a taxpayer is authorized under the income tax statutes to treat income from a transaction in either of two ways, his election to treat it in one of those ways is binding upon him. But the principle of election does not apply where the taxpayer has no legal opportunity to choose. If, under the statutes, income must be reported in a certain way and the taxpayer erroneously reports it in a different way, such treatment is not binding upon either the taxpayer or the Commissioner. The taxpayer has made an error, not an election, which error, in the absence of estoppel, is subject to correction if timely challenged by either the taxpayer or the Commissioner, Crosley Corporation v. United States, 229 F.2d 376, 379–380, C.A.6th; Ross v. Commissioner, 169 F. 2d 483, 493, C.A. 1st.

In the present case, the taxpayer had no legal opportunity to choose between reporting the income in 1953 or in 1955. Taxpayer originally had a choice under Treasury Regulations 118 to report its income from long-term contracts under either (1) basis of percentage of completion, or (2) in the taxable year in which the contract was finally completed and accepted. It had previously reported such income in the taxable year in which the contract was finally completed and accepted. That election was binding upon it in its 1953 return. Pacific National Co. v. Welch, 304 U.S. 191, 194–195, 58 S.Ct. 857, 82 L.Ed. 1282; Ross B. Hammond, Inc. v. Commissioner, 97 F.2d 545, C.A. 9th; Huntington Securities Corporation v. Busey, 112 F.2d 368, 370, C.A.6th; Franklin County Distilling Co. v. Commissioner, 125 F.2d 800, 805, C.A. 6th; Elmwood Corporation v. United States, 107 F.2d 111, C.A. 5th, cert. denied, 309 U.S. 675, 60 S.Ct. 713, 84 L. Ed. 1020. Taxpayer's action in reporting the income under consideration in its 1953 return was accordingly improper and unauthorized and should be corrected upon timely application to do so. Crosley Corporation v. United States, supra, 229 F.2d 376, 379, C.A. 6th; Ross v. Commissioner, supra, 169 F.2d 483, 496, C.A. 1st.

■ It is true that under Section 41, Internal Revenue Code of 1939, 26 U.S. C.A. § 41 taxpayer's method of accounting may be changed by the Commissioner if the method employed by the taxpayer does not clearly reflect the income. But such a change at the instance of a taxpayer must be upon application by the taxpayer and approved by the Commissioner. Section 39.41–2, Treasury Regulations 118, 1939 Internal Revenue Code; Brown v. Helvering, 291 U.S. 193, 203, 54 S.Ct. 356, 78 L.Ed. 725; Schram v. United States, 118 F.2d 541, 543–544, C.A. 6th, cert. denied, 314 U.S. 695, 62 S.Ct. 412, 86 L.Ed. 555. No application for a change was made by the taxpayer in the present case. The Commissioner's authority to order a change in the accounting methods of a taxpayer depends upon his finding that the taxpayer's method does not clearly reflect

the income. Glenn v. Kentucky Color & Chemical Co., 186 F.2d 975, 977, C.A. 6th; Huntington Securities Corporation v. Busey, supra, 112 F.2d 368, 370, C.A. 6th; Harden v. Commissioner, 223 F.2d 418, 420–421, C.A. 10th. There was no such finding in the present case, and the Commissioner did not base his assessment upon such a claim. Under these circumstances the taxpayer was required to return its profit from the long-term contract in the year 1955, consistent with the method previously used by it, and it had no election to return it in 1953 instead of in 1955.

The judgment of the District Court is reversed, and the case remanded to the District Court for further proceedings consistent with the views expressed herein.