SHOEMAKER-NASH, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 96338.    Promulgated February 16, 1940.

*M. A. Matlock, Esq.,* for the petitioner.
*Stanley B. Anderson, Esq.,* for the respondent.

418

421

OPINION.

Turner: According to the facts, the petitioner is a dealer in new and used automobiles, and was so engaged during the taxable year. In payment for automobiles sold it received notes of the purchasers, which notes it subsequently sold to either one of two finance companies. It is stipulated that petitioner kept its books of account and reported its income on the accrual method. With respect to proper treatment for income tax purposes of proceeds from sales made by a concern which keeps its accounts and makes its returns on the accrual basis, the Supreme Court, in *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, had the following to say:

* * * Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the *right* to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues. When a merchandising concern makes sales, its inventory is reduced and a claim for the purchase price arises. Article 35 of Regulations 45 under the Revenue Act of 1918 provided: "In the case of a manufacturing, merchandising, or mining business 'gross income' means the total sales, less the cost of goods sold, plus any income from investments and from incidental or outside operations or sources."

On an accrual basis, the "total sales", to which the regulation refers, are manifestly the accounts receivable arising from the sales, and these accounts

receivable, less the cost of the goods sold, figure in the statement of gross income. If such accounts receivable become uncollectible, in whole or part, the question is one of the deduction which may be taken according to the applicable statute. * * *

The petitioner being on the accrual basis, we assume that such profit as may have been realized on the sale of the automobile itself was accrued on petitioner's books when the sale was made and the subsequent sale of the notes to the finance company was a new and separate transaction. The selling price of the automobile having been so accrued, however, it may seem difficult on first impression to understand just how the notes received in payment of the selling price of the automobile can result in further gain to the dealer unless the finance company purchasing the notes pays a premium therefor or the notes include some charge or fee in excess of the selling price of the car. The parties have failed to submit a full stipulation of facts in that connection and no proof was offered at the hearing. From the respondent's notice of deficiency, however, it is to be inferred that the notes included a charge or fee over and above the selling price of the automobile. From the notice of deficiency we quote the following:

The reserve for repossessions, $2,252.25, is offset on the balance sheet by an equal amount shown as Retained by Finance Companies. Since your corporation reports income on the accrual basis, the amount due from finance companies should be included in taxable income.

Attention is called to General Counsel Memorandum 9571 (Cumulative Bulletin X-2, 1931, page 153) which is summarized as follows:

Under the plan outlined in the instant case, where a sale of an automobile is made on a credit basis, the purchaser executes a note or notes for the deferred payments, including a service charge. The notes are endorsed by the dealer and turned over to the finance company, which then remits to the dealer the unpaid portion of the selling price, not including the service charge. The finance company maintains a reserve account and, upon taking over such notes, credits the dealer therein with a portion of the service charge.

The credit thus given by the finance company to the dealer is properly to be included and taken up as income on an accrual basis of accounting, when the credit is made in favor of the dealer by the finance company.

In any event, there is no suggestion or claim that the amounts withheld by the two finance companies upon the purchase of the notes from the petitioner, the amounts so withheld being the amounts here in controversy, do not represent profit on the disposition of the said notes and do not, in fact, constitute income to the petitioner if, as, and when the said amounts become properly accruable, the claim of the petitioner rather being that General Counsel's Memorandum 9571, C. B. X-2, p. 153, is not to be accepted as laying down a general rule of law, and further that the instant case is distinguishable from the case dealt with in G. C. M. 9571 in that the payment of the reserves

withheld by the finance companies in the instant case were so contingent that they might never be paid and should not, therefore, be accrued as income until their actual release and payment.

There is nothing to indicate and, in fact, there is no contention that the price at which any given notes were sold was not agreed upon and did not become fixed at the time of the sale. The withholding of the reserve credit had to do with the time of payment and in no way affected or changed the selling price of the notes. It is true that the release or payment of the reserve credit did not automatically follow the payment or reduction of the notes of any particular automobile purchaser, but contrary to the inference to be drawn from the petitioner's brief, we are unable to conclude that the reserve credits were any the less absolute credits by the finance companies to the petitioner, payable without limitation, than in the case dealt with in G. C. M. 9571, *supra*. In that case it was pointed out that the dealer received the full benefit of the reserve credit either by actual payment or through credit on his liability as endorser in the event the purchaser of the automobile failed to meet his obligation on the notes. In the case here the petitioner was not even liable as endorser with respect to certain of the notes sold by it to the C. I. T. Corporation, the said notes having been sold and endorsed to that corporation without recourse, and in the event of default on those notes by the purchaser of the automobile, the only apparent recourse that the C. I. T. Corporation had against the petitioner was to repossess the automobile covered by such notes and to require the petitioner to purchase the automobile at a price and subject to the conditions specified in the contract between it and petitioner. Furthermore it appears that the C. I. T. Corporation not only purchased deferred payment notes from the petitioner, but extended credit to petitioner in connection with the acquisition of new cars from the manufacturer and with respect to another activity designated as the "C. I. T. Quick Turn Over Plan—Used Car Wholesale", and the reserve retained by the C. I. T. Corporation out of the purchase price of the deferred payment notes was held in part at least as security for the credit or advances so made. Obviously where the reserve credit retained out of the purchase price of deferred payment notes becomes a reserve securing credits or advances otherwise granted or made to the petitioner by the C. I. T. Corporation, there is no basis whatever for the claim that the said reserve credit retained from the purchase price of the notes is contingent and may never be paid. Cf. *Luther Bonham*, 33 B. T. A. 1100; affd., 89 Fed. (2d) 725.

From the above it is, in our opinion, apparent that the sale of notes of automobile purchasers to the finance companies was as much a part of the business carried on by the petitioner as the sale of the automobiles themselves, cf. *Hercules Motors Corporation*, 40 B. T. A. 999, and,

the petitioner being on the accrual basis, we find nothing in this case to justify the conclusion that the profit from the sale of such notes is not accruable when the notes are sold. *Spring City Foundry Co.* v. *Commissioner, supra; Rouss* v. *Bowers*, 30 Fed. (2d) 628. For, although the amount of the reserve credit is not immediately paid and does not become immediately payable, there is no showing that it will not be collectible when due or that its collection in the future is improbable. The decisions in *Commissioner* v. *Cleveland Trinidad Paving Co.*, 62 Fed. (2d) 85, and other cases of similar import discussed by the petitioner in its brief are not applicable here.

*Decision will be entered for the respondent.*