**J. H. SCHAEFFER, Jr., and Opal R. Schaeffer, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 13421.

United States Court of Appeals
Sixth Circuit.

Aug. 20, 1958.

Leo L. Cole, Jr., and James F. Schaeffer, Memphis, Tenn., for petitioners.

Joseph F. Goetten, Washington, D. C., Charles K. Rice, Lee A. Jackson, Robert N. Anderson, Carolyn R. Just, Department of Justice, Washington, D. C., on brief, for respondent.

Before SIMONS, Chief Judge, MILLER, Circuit Judge, and CECIL, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioners filed this action in the United States Tax Court seeking a redetermination of deficiency income tax assessments for the years 1952 and 1953, resulting from the failure on the part of the petitioners to include in gross income certain credits in their favor on the books of a finance company, which the Commissioner ruled constituted ac-

crued taxable income. The Tax Court upheld the assessments, which ruling is now before us on petition for review.

The facts, which were for the most part stipulated, were found by the Tax Court as follows. Petitioners, who are husband and wife, are residents of Germantown, Tennessee. They filed joint Federal income tax returns for the years 1952 and 1953. J. H. Schaeffer, Jr., the husband, hereinafter referred to as "petitioner" operated a retail used automobile business as an individual proprietor during 1952 and 1953 under the trade name of J & S Motors. The books and accounts of the business were kept on an accrual basis. In the normal course of the operation of the business petitioner sold notes executed by purchasers of automobiles under conditional sale contracts to banks and finance companies. Certain notes executed by such purchasers were sold in 1952 and 1953 by petitioner without recourse on petitioner to Memphis Bank & Trust Company and Guardian Discount Company, both of Memphis, Tennessee. These were closely related corporations in organization, operation and business practices, having the same principal place of business, and for the purposes of this opinion will be referred to collectively as the "Finance Company."

During 1952 and 1953 whenever notes, executed by purchasers of automobiles from J & S Motors and secured by conditional sales contracts on such automobiles, were purchased from J & S Motors by the Finance Company certain payments were made to J & S Motors and certain reserves were withheld and credited to two separate and distinct reserve accounts on the books of the Finance Company. These reserves were identified on such books as "Loss Reserve" accounts and "Special Reserve" or "Rebate" accounts. Whether the amounts credited by the Finance Company to the Loss Reserve accounts constituted taxable income for the years 1952 and 1953 is

the question presented. Contrary to their original contention, petitioners now concede that the amounts credited to the Special Reserve or Rebate accounts constituted taxable income, and no issue is presented on the present review with respect thereto.

Under the agreement between petitioner and the Finance Company, the amounts withheld and credited to the Loss Reserve accounts were usually 2 per cent of the notes. However, the percentage withheld varied in amount with the model of the car, and a larger percentage was withheld on older models. The creation and operation of the Loss Reserve accounts is shown by the following typical transaction. J & S Motors, in selling an automobile to a customer, would first obtain from the customer a credit statement which it submitted to the Finance Company. If the purchaser's credit was satisfactory J & S Motors made out a bill of sale indicating who held the lien on the automobile and informing the purchaser where payments were to be made. The purchaser would sign a conditional sale contract and make a down payment, consisting of a trade-in or cash or both. The following is an example of such a sale made July 26, 1952.

| | |
|---|---|
| Cash Price | $833.00 |
| Net trade-in allowance | 228.00 |
| Cash on delivery | 60.00 |
| Total down payment | 288.00 |
| To finance | 545.00 |
| Sales tax | 6.90* |
| Insurance costs | 100.07 |
| Finance charges | 195.53 |
| Total time balance | 840.60 |

Upon completion of a sale J & S Motors would take the conditional sale contract to the Finance Company and receive from it a check for the balance of the purchase price. In the sale of July 26, 1952, referred to above, the Finance Company reflected the purchase of the conditional sale contract as follows.

* This item was apparently not included in computing the total.

Notes Receivable .............$840.60
Cash, payment to J & S Motors .. 545.00
Cash, payment of insurance
    premium ................. 100.07
Loss reserve, J & S Motors .... 24.23
Special rebate, J & S Motors .... 113.33
Income ..................... 57.97
Total ......................$840.60

The books of J & S Motors did not reflect the reserves as income. The only amount recorded as income from the sale of an automobile was the price of the car, as if cash had been paid. By agreement between petitioner and the Finance Company, the Loss Reserve accounts of petitioner were chargeable with any and all losses and costs incurred by the Finance Company in connection with or related to notes purchased from the petitioner. In addition, there was a verbal agreement between petitioner and the Finance Company that J & S Motors would further guarantee the company against loss by repurchasing repossessed cars from it at a fair retail price.

No amounts were payable to petitioner out of such Loss Reserve accounts until the balance of such accounts exceeded 4 per cent of the total value of outstanding and unpaid balances on all notes purchased from petitioner. No payment was to be made out of such accounts as long as any debt owed by petitioner to the Finance Company was due and unpaid. During all of 1952 and 1953 amounts credited to the Loss Reserve accounts on the books of the Finance Company were held as security against losses on notes purchased from J & S Motors. The balances on Loss Reserve accounts did not at any time during 1952 or 1953 exceed 4 per cent of the outstanding value of or amount payable on notes purchased from J & S Motors by the Finance Company. During 1952 and 1953 the petitioner did not receive any of the Loss Reserves credited on the books of the Finance Company. However, if all of the purchasers of automobiles whose notes were held by the Finance Company had met their payments on time, J & S Motors was entitled to receive the entire balances in the accumulated Loss Reserve accounts.

None of the amounts added to the Loss Reserve accounts were treated or reported as income by the petitioners. The deficiency assessments herein involved resulted from the Commissioner's ruling that petitioner's net income for the years in question should be increased by the amount of the net increases during 1952 and 1953 in the Loss Reserve accounts. Such net increases were $4,064.29 and $8,481.95, respectively, with the net balance increasing from $2,268.74 on December 31, 1951, to $14,814.98 on December 31, 1953. The Commissioner did not include in taxable income all of the amounts added to the Loss Reserve accounts in a particular year, but included only the net increases in such accounts, after allowing for actual losses arising out of defaults occurring in each of the taxable years.

■ Since petitioner was on an accrual basis for income tax purposes, the amounts in question constituted taxable income if they accrued to the petitioner during the taxable year, even though he did not actually receive them during the year. "Keeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income. When the right to receive an amount becomes fixed, the right accrues." Spring City Foundry Co. v. Commissioner, 292 U.S. 182, 184–185, 54 S.Ct. 644, 645, 78 L.Ed. 1200; North American Oil Consolidated v. Burnet, 286 U.S. 417, 423, 52 S.Ct. 613, 76 L.Ed. 1197. The application of this well settled rule to cases involving factual situations similar to the present one has been the subject of considerable litigation. The petitioners' contention that the credits did not accrue as income in 1952 and 1953 finds support in Johnson v. Commissioner, 4 Cir., 233 F.2d 952; Texas Trailercoach, Inc., v. Commissioner, 5 Cir., 251 F.2d 395; and Glover v. Commissioner, 8 Cir., 253

F.2d 735. See also: Commissioner of Internal Revenue v. Cleveland Trinidad Paving Co., 6 Cir., 62 F.2d 85; Keasbey & Mattison Co. v. United States, 3 Cir., 141 F.2d 163. The Commissioner's contention is supported by numerous tax court decisions, including Shoemaker-Nash, Inc., v. Commissioner, 41 B.T.A. 417; Brodsky v. Commissioner, 27 T.C. 216; and Kilborn v. Commissioner, 29 T.C. 102 and by Baird v. Commissioner, 7 Cir., 256 F.2d 918. Three of the cases relied upon by petitioners, Johnson v. Commissioner, supra, Texas Trailer-coach, Inc., v. Commissioner, supra, and Glover v. Commissioner, supra, are reversals of Tax Court decisions which also upheld the Commissioner's contention. The opinions in the cases above referred to contain a review of the authorities and a thorough discussion of the question, which it is unnecessary to repeat in this opinion. Basically, the cases sustaining the petitioners take the position that the amounts credited to the Reserve Loss accounts were payable to the petitioner only upon various conditions precedent, which were contingencies which might bar indefinitely the dealer's receipt of the payments or the right to receive any payments at all from the account, thus constituting them contingent credits, rather than accrued income. The cases supporting the Commissioner's contention express the view that the amounts credited by the Finance Company to the Reserve Loss accounts were carried by the Finance Company and recognized by it as a liability in favor of the petitioner, that petitioner's legal right to them was undisputed, and that only the time of payment was deferred. Franklin County Distilling Co., Inc., v. Commissioner, 6 Cir., 125 F.2d 800. The fact that the exact amount to be paid is not determined until a later year is not material. Continental Tie & Lumber Co. v. United States, 286 U.S. 290, 295, 52 S.Ct. 529, 76 L.Ed. 1111.

■ We agree with the Commissioner that there was nothing contingent about petitioner's legal right to the amounts so credited. The only contingency which

existed was how much of these amounts would not be paid to the petitioner but would be applied by the Finance Company to the payment of petitioner's legal obligations. The contingency was in the amount of the offset, not in the amount of the accrued income. Brown v. Helvering, 291 U.S. 193, 200–201, 54 S.Ct. 356, 78 L.Ed. 725. For income tax purposes, the amount of accrued income was fixed and did not vary. Although the amount of the credit on the books of the Finance Company might be later reduced, such reduction would be the result of the Finance Company using a portion of the credit to discharge petitioner's legal obligations, which automatically offset any reduction in the credit. The payment of a legal obligation of a taxpayer is income to the taxpayer even though such income is not actually received by him. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729, 49 S.Ct. 499, 73 L.Ed. 918; Tressler v. Commissioner, 9 Cir., 228 F.2d 356, 359, Note 6; Northern Trust Co. of Chicago v. United States, 7 Cir., 193 F.2d 127. The immediate payment of the amounts so credited was prevented only because petitioner pledged these amounts to secure other possible obligations of his own that might later arise.

■ The liabilities, the payment of which was secured by the Loss Reserve accounts, were contingent liabilities of the petitioner, such as *might* result from probable default on the part of the obligors in making the required payments. Bernstein v. United States, 5 Cir., 234 F.2d 475, 481. The tax on income received in one year can not be withheld because losses may thereafter occur in a later year or because the ultimate result of a particular transaction may be a loss instead of a profit. Heiner v. Mellon, 304 U.S. 271, 276, 58 S.Ct. 926, 82 L.Ed. 1337; Burnet v. Sanford & Brooks Co., 282 U.S. 359, 364, 51 S.Ct. 150, 75 L.Ed. 383. Such obligations can be taken as income tax deductions only in the year in which they become actual liabilities. Brown v. Helvering, supra, 291 U.S. 193, 200–201, 54 S.Ct. 356, 78 L.Ed. 725; E.

H. Sheldon & Co. v. Commissioner, 6 Cir., 214 F.2d 655, 656; Franklin County Distilling Co., Inc., v. Commissioner, supra, 6 Cir., 125 F.2d 800, 804. When a taxpayer is on the accrual basis losses are handled separately from income even though they relate to an item of gross income which has accrued in the same year. Spring City Foundry Co. v. Commissioner, supra, 292 U.S. 182, 185, 54 S.Ct. 644, 78 L.Ed. 1200. Under the ruling in Brown v. Helvering, supra, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725, and Heiner v. Mellon, supra, 304 U.S. 271, 276, 58 S.Ct. 926, 82 L.Ed. 1337, the Commissioner's position must be sustained.

The foregoing analysis of the question considers the transaction only as one between the petitioner and the Finance Company. Before that transaction was entered into, the petitioner concluded a prior transaction with the purchaser of the automobile which, we believe, is the controlling factor in the case. Petitioner in selling a car to a purchaser and in taking the purchaser's note and conditional sale contract acquired an asset in the nature of an account receivable, with respect to which there was no contingency whatsoever. As between petitioner and the purchaser of the automobile, the entire amount of the contract obligation accrued to the petitioner. If such account receivable became uncollectible in whole or in part, the question was one of taking a deduction under the applicable statute. Spring City Foundry Co. v. Commissioner, supra, 292 U.S. 182, 185, 54 S.Ct. 644, 78 L.Ed. 1200. There was no obligation on the part of the petitioner to sell this account receivable to the Finance Company. Actually, in a number of instances the petitioner did not sell such an account receivable and the amount called for by his contract was treated by him as taxable income. We see no reason why the completed transaction with the purchaser should not be treated in the same way in other instances where the petitioner without any legal obligation on his part to do so sells the account receivable to a finance company. The income has accrued to the petitioner before the transfer is made to the Finance Company, and such subsequent transfer does not change the legal effect of the prior completed transaction. Baird v. Commissioner, supra, 7 Cir., 256 F.2d 918. See: Chamberlin v. Commissioner, 6 Cir., 207 F.2d 462, 469, certiorari denied, 347 U.S. 918, 74 S.Ct. 516, 98 L.Ed. 1073.

The decision of the Tax Court is affirmed.