**Abraham J. KRAVETZ, Assignee of Lemley Motors, Inc., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 1–59.

United States District Court
D. New Jersey.

April 9, 1962.

Daniel A. Fierro, Jr., Fort Lee, N. J., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Jerome Fink, Richard W. Perkins, Leonard M. Goldberg, Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Raymond W. Young, Asst. U. S. Atty., Newark, N. J., for defendant.

AUGELLI, District Judge.

This is an action for the recovery of corporate income taxes alleged to have been erroneously assessed and collected from plaintiff's assignor for the fiscal years ended March 31, 1954 and March 31, 1955.

The facts have been stipulated and disclose that plaintiff's assignor, Lemley Motors, Inc., was incorporated under the laws of the State of New Jersey on July 10, 1953. During the taxable periods here involved, July 10, 1953 to March 31, 1954 and April 1, 1954 to March 31, 1955, Lemley Motors, Inc. ("taxpayer"), was a duly authorized dealer in Lincoln and Mercury automobiles, and engaged in the business of selling new and used motor vehicles in Jersey City, New Jersey. A number of cars sold by the taxpayer during said taxable periods were "credit sales" which were negotiated, consummated and financed in the following manner:

Taxpayer and the prospective purchaser of a car would agree on the "cash delivered price" to be paid for the vehicle, and as part payment of that price the customer made a down payment either in cash or by "trade in" or both. To the balance of the "cash delivered price" there was added an item for insurance

and a "finance charge". The purchaser of the car would then execute and deliver to the taxpayer the necessary papers evidencing indebtedness of the total amount so calculated, which indebtedness was payable in instalments. These documents ("paper"), were then sold by the taxpayer to the Universal C.I.T. Credit Corporation ("Universal") pursuant to a "Retail Protection Agreement For Automobile Dealers" dated August 18, 1953.

Upon receipt of the paper Universal would pay to taxpayer a major portion of the purchase price thereof. The remainder was retained by Universal and credited on its books to a reserve account in the name of the taxpayer. The moneys credited to this account were the reserves specified in paragraphs 4 and 5 of the agreement dated August 18, 1953.[1] Upon the liquidation of all paper purchased by Universal from the taxpayer, Universal would pay the remaining balance in the account to taxpayer.

In its income tax returns for the periods here involved, the taxpayer included as income only the cash it received from Universal and not the amounts credited to its reserve account. So that when, on June 15, 1954, taxpayer filed its corporate income tax return on the accrual basis for the taxable year beginning on July 10, 1953 and ending on March 31, 1954, it reported an income tax liability of $4,673.26, and when taxpayer filed its return on the accrual basis for the taxable period April 1, 1954 to March 31, 1955, it reported an income tax liability of $6,057.85

On June 28, 1957, the Commissioner of Internal Revenue assessed against the taxpayer for the taxable period running from July 10, 1953 to March 31, 1954, an additional tax of $4,284.60, plus interest of $780.35, and for the taxable period of April 1, 1954 to March 31, 1955, an additional tax of $2,925.65, plus interest of $357.31. These additional assessments resulted from the inclusion in income for the taxable period July 10, 1953 to March 31, 1954 of the sum of $8,136.42, and for the taxable period April 1, 1954 to March 31, 1955, of the sum of $6,370.00. These amounts represented increases during each of said taxable periods of the sums credited to the taxpayer's reserve account with Universal.

The taxpayer paid the additional taxes and thereafter timely filed claims for refund of $2,618.84 of taxes paid for the period July 10, 1953 to March 31, 1954, plus interest, and for refund of $2,538.64 of taxes paid for the period April 1, 1954 to March 31, 1955, plus interest. In each of the claims for refund the taxpayer asserted it was error to include as income for the taxable years involved, the moneys credited to the reserve account in its name on the books of Universal, because the right of the taxpayer to receive the money had not become fixed during said taxable years. These claims were disallowed in full by the District Director of Internal Revenue and this action followed.

The question for decision here is whether the amounts resulting from the operation of paragraphs 4 and 5 of the agreement of August 18, 1953 and credited to the taxpayer's reserve account on the books of Universal constituted accrued taxable income to the taxpayer for the taxable periods when such credits were made.

[1]. Paragraphs 4 and 5 of the agreement of August 18, 1953, provided that at certain intervals (3 times in each 12 month period), Universal, if the taxpayer was not indebted to it, would pay taxpayer its accumulated reserves in excess of 3% of the then aggregate unpaid balances on paper purchased by Universal from taxpayer. It was further provided that if Universal should stop buying taxpayer's paper, Universal could hold and apply all reserves until liquidation of all paper purchased by Universal from taxpayer was completed. It was also agreed that if prepayment of an account resulted in Universal making a refund of any part of a service charge, taxpayer would pay Universal the same percentage of all reserves credited or paid to taxpayer on such account as the amount of service refund bore to the amount of the original charge, exclusive of insurance premium.

■ The case of Commissioner v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959), decided after the complaint herein was filed, is dispositive of the question now before the court and compels an affirmance of the disallowance of the taxpayer's claims for refund. That case held that moneys credited to a dealer's reserve account on the books of a finance company constituted accrued taxable income during the tax years in which such moneys were credited to such reserve account.

The Hansen opinion also dealt with two other appeals, Baird v. Commissioner and Commissioner v. Glover. The finance company involved in Glover is the same as the one used by the taxpayer in the instant case. In Glover, as here, the taxpayer signed a letter [2] addressed to Universal which, *inter alia*, provided for the purchase by Universal of paper acceptable to it; payment to the taxpayer of a major percentage of the agreed price therefor; and the retention by Universal of the remaining percentage which it would credit on its books to a "Dealers Reserve Account" in the name of the taxpayer for the purpose of securing performance by the taxpayer of its obligations to Universal. In Glover, too, the taxpayer included as income in his tax returns only the cash received from Universal for the particular tax year involved and not the amount credited to his reserve account. In short, the operations of Glover, as outlined in the opinion of the Supreme Court are substantially the same as those disclosed in the Stipulation of Facts filed in this case.

The Hansen case (360 U.S. pp. 449, 450, 79 S.Ct. 1272, 1273, 3 L.Ed.2d 1360) resolved the conflict that existed in some of the circuits on the question here involved. It is now clear, absent a showing that the whole or any part of the money withheld and credited to an accrual basis dealer's reserve account on the books of a finance company is not taxable, such money will be treated as accrued taxable income to the dealer at the time the withheld amounts are entered on the books of the finance company as a liability to the dealer, because it is at that time that the dealer acquires a fixed right to receive the amounts so retained by the finance company. And, of course, the mere fact that the finance company may exercise its contractual right to resort to such money for the purpose of discharging an obligation owing to it by the dealer can make no difference.

The briefs submitted in behalf of the taxpayer attempt to distinguish Hansen. Many of the assertions of fact made in those briefs find no support in the stipulation filed with the court. In substance it is alleged that the "major portion" of the money paid by Universal to the taxpayer was invariably the unpaid cash balance due from the purchaser of an automobile, and that the "remainder" credited to taxpayer's reserve account consisted solely of a portion of the service charges involved in each particular transaction. These service charges, says the taxpayer, cannot be considered as accrued income because they are subject to reduction by refunds Universal would be compelled to make to automobile purchasers who prepaid their notes; that such service charges are in fact unearned; that the account to which such service charges are credited is subject to reduction or depletion by reason of the happening of certain contingencies over which the taxpayer has no control; and that the "fair market value" of the credits made to the reserve account is, under the circumstances, not determinable.

■ The burden, of course, was on the taxpayer to satisfy the Commissioner it did not owe the additional taxes assessed against it. In this it failed. There is

2. A reading of the opinion makes it clear that the "letter" is practically identical with the so-called "Retail Protection Agreement For Retail Automobile Dealers" attached to the Stipulation of Facts in this case and dated August 18, 1953.

Universal's "reserve arrangement" mentioned in paragraph 4 of the agreement of August 18, 1953, is not before this court, nor did it form a part of the record in the Supreme Court.

nothing before the court that would justify a conclusion other than that reached by the Commissioner. Paragraph 15 of the stipulation of facts does not state, nor can it be inferred therefrom, that the money credited to the taxpayer's reserve account consisted solely of a portion of service charges. The parties agreed that with respect to paper sold by the taxpayer to Universal, the latter would pay the major portion of the purchase price thereof to taxpayer, and the remainder would be retained by Universal and credited on its books to a reserve account in the name of the taxpayer, and that upon liquidation of all purchased paper, Universal would pay the remaining balance in the account to taxpayer. It was also agreed in paragraph 17 of the stipulation that the amounts included as additional income to the taxpayer for the tax years here involved represented increases during each taxable period of the amounts credited to taxpayer's reserve account.

The taxpayers in Hansen also contended that certain percentages of the "finance charges" there involved, not being a part of the purchase price of the installment paper, should not be regarded as accrued income. Said the court (360 U.S. 446, 468, 79 S.Ct. 1270, 1282):

> "However, the respective taxpayers, each of whom had the burden of showing that he did not owe the taxes which the Commissioner proposed to assess against him, wholly failed to adduce evidence to support their claims. They failed even to adduce evidence showing whether any percentages of the 'finance charges' that may have been allowed to them by the respective finance companies were entered on the books of the finance companies as credits to the respective 'Dealers Reserve Accounts,' and if so, whether such percentages of the 'finance charges' so credited had been identified and separated in character and amount from the percentages of the purchase price of the installment paper that were retained by the finance companies and entered on their books as liabilities to the dealers in their respective Dealers Reserve Accounts. For these reasons the respective taxpayers have wholly failed to sustain the burden of showing that any part of the amounts credited on the books of the finance companies to the respective Dealers Reserve Accounts was entitled to special treatment."

Cases decided subsequent to Hansen fortify the position taken by the Commissioner in this case. See Morgan v. C.I.R., 277 F.2d 152 (9 Cir. 1960); General Gas Corporation v. C.I.R., 293 F.2d 35 (5 Cir. 1961); and Shapiro v. C. I. R., 295 F.2d 306 (9 Cir. 1961). See also, Schaeffer v. C. I. R., 258 F.2d 861 (6 Cir. 1958) and Wiley v. C. I. R., 266 F.2d 48 (6 Cir. 1959).

The case of Leedy-Glover Realty & Insurance Co. v. C. I. R., 13 T.C. 95 (1949) cited by taxpayer is not in point. In that case commissions on policies for a longer period than one year were placed in escrow and released to taxpayer each year ratably over the life of the policies. Under its contract with the insurance company the taxpayer was required to service the policies over their full terms. Under those circumstances it was held that the taxpayer, reporting on an accrual basis, was taxable in each year on only that portion of the commissions which it became entitled to receive during the year. Other cases cited by taxpayer, Burnet v. Logan, 283 U.S. 404, 51 S.Ct. 550, 75 L.Ed. 1143 (1931) and Lentz v. C. I. R., 28 T.C. 1157 (1957) dealt with the altogether different issue of determining whether the amounts involved in those cases constituted capital gain or ordinary income.

On the basis of the record before the Court the complaint will be dismissed and judgment entered for the defendant. This opinion shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Submit order.