*Decision will be entered under Rule 50.*

CHARLES E. BROWN AND DOROTHEA JEAN BROWN, TRANSFEREES OF WEST COAST TRAILER SALES, A DISSOLVED CORPORATION, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3492–62.    Filed March 19, 1964.

*Vernon Deming*, for the petitioners.
*John O. Hargrove*, for the respondent.

OPINION

ARUNDELL, *Judge:* The respondent determined that petitioners are liable as transferees of the assets of West Coast Trailer Sales, a dissolved corporation, for unpaid deficiencies in income and excess profits taxes, plus interest as provided by law, due from that corporation for the taxable years (or periods) September 2, 1952, to December 31, 1952, and January 1, 1953, to April 30, 1953, in amounts as follows:

| Period ending— | Deficiency | Amount paid by transferror | Unpaid deficiencies |
|---|---|---|---|
| Dec. 31, 1952 | $22,393.89 | $2,239.39 | $20,154.50 |
| Apr. 30, 1953 | 17,310.75 | 1,731.08 | 15,579.67 |
| Total | | | 35,734.17 |

Petitioners concede that they are liable as transferees for the said unpaid deficiencies but pray only that this Court "determine that petitioners may pay and discharge the deficiencies according to the election filed under the provisions of the Dealers Reserve Adjustment Act of 1960," Pub. L. 86–459 (May 13, 1960).

The facts were stipulated and are so found.

Petitioners are individuals residing in Carmichael, Calif.

Petitioners organized a corporation, West Coast Trailer Sales, hereinafter sometimes called West Coast, under the laws of California on or about September 1, 1952. West Coast engaged in the business of retail selling of new and used house trailers in North Sacramento, Calif. West Coast was owned solely by petitioners.

West Coast employed the accrual method of accounting. However, dealer reserve income was included in its taxable income only when the said dealer reserve income was received in cash.

West Coast filed returns for the taxable periods September 2, 1952, to December 31, 1952, and January 1, 1953, to April 30, 1953, with the district director of internal revenue at San Francisco. The returns were filed on or about March 16, 1953, and March 9, 1954, respectively.

Amended returns in the name of West Coast for the said taxable periods were filed on November 30, 1960. No tax returns for West Coast were filed for any taxable years subsequent to 1953.

The board of directors of West Coast voted to dissolve the corporation on April 28, 1953. On or about April 30, 1953, all of the assets of West Coast, including dealer reserve funds in the amount of $174,-852.87, and other assets of the value of approximately $269,131.32, were transferred to petitioners without consideration. After the said transfer West Coast had no assets and did not engage in any trade or business.

On December 30, 1953, the certificate of winding up and dissolution was duly filed with the secretary of state of California.

On June 22, 1959, the U.S. Supreme Court handed down its decision in *Commissioner* v. *Hansen*, 360 U.S. 446.

On May 13, 1960, Congress enacted the Dealer Reserve Income Adjustment Act of 1960, hereinafter sometimes referred to as the act. (Pub. L. 86-459 (May 13, 1960).)

On or about August 22, 1956, respondent mailed to West Coast a deficiency notice in which deficiencies of $22,393.89 and $17,310.75 were determined for the periods ending December 31, 1952, and April 30, 1953, respectively. These deficiencies were contested in a petition filed with this Court on or about November 19, 1956, and docketed as docket No. 64960. On November 18, 1960, we entered our decision pursuant to agreement of the parties that the deficiencies were as determined by the respondent.

On or about August 31, 1960, but before September 1, 1960, a document [1] was filed with the district director of internal revenue at San Francisco under the name of "West Coast Trailer Sales By Charles E. Brown President" relative to elections under section 4 (a) and (b) of the act. The body of this document is as follows:

This statement of election is being filed by West Coast Trailer Sales, hereinafter designated as taxpayer, pursuant to the Dealer Reserve Income Adjustment Act of 1960 and the Proposed Regulations relating thereto.

*Election Under Section 4(a).*

(1) Election is hereby made under Section 4(a) of that Act to have Section 481 of the Internal Revenue Code of 1954 not apply.

(2) During the taxable years September 2, 1952, to December 31, 1952, and January 1, 1953, to April 30, 1953, the taxpayer was engaged in the business of selling automobile trailers at retail under conditional sale contracts. The contracts were assigned to a financial institution under an agreement whereby

[1] The document is stamped "Received Aug. 31, 1960 Dist Director Int Rev. San Francisco Sacramento Office."

that institution established a dealer reserve account in taxpayer's favor and credited the account with certain amounts which were to become payable to taxpayer under certain conditions.

Taxpayer was required to compute and did compute its income for those years on the accrual method. Taxpayer did not treat the amounts of the credits to its dealer reserve account as accrued income at the time of the credits, but proceeded rather on the basis that such amounts were accruable for a subsequent taxable year.

A proceeding is now pending before the Tax Court of the United States (Docket No. 64960) involving deficiencies in tax in the amounts of $22,393.89 and $17,310.75 for the taxable years ended December 31, 1952, and April 30, 1953, respectively. The deficiencies are based on the additions to income of the amounts of $37,306.23 and $35,969.40 as accruals of dealer reserve income for the taxable years ended December 31, 1952, and April 30, 1953, respectively.

(3) This election applies to the taxable years ended December 31, 1952, and April 30, 1953.

*Election Under Section 4(b).*

(1) Election is hereby made under Section 4(b) of that Act to pay tax in installments.

(2) A summary of the total increases and decreases in tax, together with interest thereon, for the taxable years ended December 31, 1952, and April 30, 1953, is as follows:

| Taxable year ended— | Tax | Interest | Total |
|---|---|---|---|
| Dec. 31, 1952 | $22,393.89 | $10,021.27 | $32,415.16 |
| Apr. 30, 1953 | 17,310.75 | 6,707.64 | 24,018.39 |
| Totals | 39,704.64 | 16,728.91 | 56,433.55 |

(3) The taxpayer hereby elects to pay the net increase in tax in ten (10) annual installments.

The parties have stipulated that the "Assessment of the tax liability here involved is not barred by the statute of limitations."

West Coast like many other dealers who made sales on the installment plan sold their installment contracts to finance companies. The finance company would retain a part of the proceeds payable to the dealer as security for his guarantee that the buyer would make his payments, and would credit the retained amount to a reserve account in the dealer's name. Prior to the decision in *Commissioner* v. *Hansen, supra,* the issue as to whether the amounts retained by finance companies were accruable by the dealers when credited to the reserve, or when actually paid to them, was widely litigated. This Court had held that the amounts were accruable by the dealers when credited. *Shoemaker-Nash, Inc.,* 41 B.T.A. 417. We were affirmed by two circuits. *Baird* v. *Commissioner,* 256 F. 2d 918 (C.A. 7, 1958), affirming a Memorandum Opinion of this Court and later affirmed by the Supreme Court sub nom. *Commissioner* v. *Hansen, supra;* and *Schaeffer* v. *Commissioner,* 258 F. 2d 861 (C.A. 6, 1958), certiorari denied 360 U.S. 917, affirming a Memorandum Opinion of this Court. But there

were at least five circuits that held the other way.[2]  After the Supreme Court handed down its decision in *Commissioner* v. *Hansen*,[3] *supra*, Congress enacted the Dealer Reserve Income Adjustment Act of 1960, *supra*, as a relief measure for those dealers who had not been reporting the dealer reserve credit as income at the time credited and under the *Hansen* decision were faced with a 1-year tax liability for unreported credits of the reserve built up over several prior years.  Commenting upon this situation the House, in its Report No. 1170, 86th Cong., 1st Sess., said:

In view of the large number of circuit court decisions in favor of the taxpayers and the fact that from 1944 to 1958 without exception the circuit court holdings were in favor of the taxpayers, your committee believes it would be unfortunate to require the dealers involved to make substantial payments of tax for these back years all in the current year. * * *

The act provided for two alternative relief methods: Dealers could (1) elect to apply section 481 of the 1954 Code and treat the correction as a change in the method of accounting, or (2) could choose *not* to apply section 481 but to pay the resulting tax in 10 or less annual installments.  Section 2 of the act provided that the election had to be made before September 1, 1960.  Under the document filed August 31, 1960, West Coast purported to elect to pay the deficiencies resulting from the *Hansen* decision in 10 annual installments.

Petitioners contend that as transferees they are entitled to pay their liabilities, plus interest as provided by law, in 10 annual installments.

Respondent contends: (1) that since West Coast was dissolved on December 30, 1953, and did not engage in any trade or business after April 30, 1953, it was not in existence under the applicable California and Federal law and regulations for the purpose of filing the requisite election under the act, and (2) in any event "even if the corporation remained extant for limited purposes as late as 1960, it did not qualify for the installment payment by virtue of having ceased to engage in a trade or business as stated in Section 4(f) of the Act of 1960."

Section 4(f) of the act provides in part:

(f) *Termination of Installment Payment Privilege.*—The extension of time provided by this section for payment of tax shall cease to apply, and any unpaid installments shall be paid upon notice and demand from the Secretary of the Treasury or his delegate, if

* * * * * * *

---

[2] *Keasbey & Mattison Co.* v. *United States*, 141 F. 2d 163 (C.A. 3, 1944) ; *Johnson* v. *Commissioner*, 233 F. 2d 952 (C.A. 4, 1956), reversing 25 T.C. 123 ; *Texas Trailercoach, Inc.* v. *Commissioner*, 251 F. 2d 395 (C.A. 5, 1958), reversing and remanding 27 T.C. 575 ; *Glover* v. *Commissioner*, 253 F. 2d 735 (C.A. 8, 1958), reversing a Memorandum Opinion of this Court and later reversed by the Supreme Court sub nom. *Commissioner* v. *Hansen*, 360 U.S. 446 ; and *Hansen* v. *Commissioner*, 258 F. 2d 585 (C.A. 9, 1958), reversing and remanding on this issue a Memorandum Opinion of this Court and later reversed by the Supreme Court, 360 U.S. 446.

[3] Considered with the *Hansen* case were the cases of *Glover* v. *Commissioner*, 253 F. 2d 735, and *Baird* v. *Commissioner*, 256 F. 2d 918.

(3) in the case of a taxpayer which is a corporation, the taxpayer ceases to engage in a trade or business, unless the unpaid portion of the tax payable in installments is required to be taken into account by the acquiring corporation under section 5(d).

The parties have stipulated that after April 30, 1953, West Coast "had no assets and did not engage in any trade or business." In view of this stipulation and section 4(f), *supra*, we need not decide whether, as petitioners contend, West Coast, under sections 5201[4] and 5400[5] of West's Annotated California Codes continued in existence for the purpose of filing the requisite election under the act. For the special purposes of this case we may assume that it did. But that assumption does not help petitioners. Nowhere in the act is there any provision for granting a transferee of the assets of a corporation the right to pay its transferee liability in installments unless the transferee be an acquiring corporation, which these individual transferees obviously are not. Since West Coast would not have been entitled to the installment payment provision had it not dissolved but simply ceased to engage in a trade or business after the act of 1960 became law, it certainly cannot claim greater privilege, i.e., exemption from the termination section 4(f), simply by virtue of its having dissolved and having ceased to engage in any trade or business for more than 7 years prior to the enactment of the act.

We hold that petitioners, as transferees, are not entitled to pay their transferee liability, plus interest as provided by law, in installments.

*Decision will be entered under Rule 50.*

---

[4] SEC. 5201. Filing certificate. The certificate of winding up and dissolution shall be filed in the Office of the Secretary of State, and thereupon corporate existence shall cease except for the purpose of further winding up if needed. * * *

[5] SEC. 5400. Purposes for which continued. A corporation which is dissolved by the expiration of its term of existence, by forfeiture of existence by order of court, or otherwise, nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof.