T.C. Summary Opinion 2005-35

UNITED STATES TAX COURT

GERALD A. BUNKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2703-04S.                    Filed March 30, 2005.

Gerald A. Bunker, pro se.

<u>Daniel N. Price</u>, for respondent.

GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $4,867 and an addition to tax of $195 under section 6651(a)(1) for the taxable year 2001.

After concessions, the issue remaining for decision is whether certain payments made by insurance companies, during the year in issue, of indebtedness owing by petitioner on credit cards constitute gross income in the amount of $15,884[1] under section 61(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts, stipulation of settled issues, and the attached exhibits are incorporated herein by this reference.  At the time of filing his petition, petitioner resided in Schertz, Texas.

Prior to 2001, petitioner was employed in a civilian position at Kelly Air Force Base (Kelly AFB) in San Antonio, Texas.  While employed at Kelly AFB, petitioner availed himself of the opportunity to purchase credit card insurance from American Security Insurance Company (American Security) and Capital One Bank (Capital One) that provided for the payment of

---

[1]Respondent conceded $596 of this amount, as explained later.

portions of indebtedness owing on petitioner's credit cards in the event of death, disability, or unemployment.[2]

Due to the Defense Base Closure and Realignment Commission which closed Kelly AFB in 2001, petitioner lost his employment at Kelly AFB on November 6, 2000. Because of petitioner's unemployment, petitioner satisfied one of the contingencies provided by the credit card insurance policies he carried. Thus, petitioner applied for insurance benefits pursuant to the credit card insurance policies from American Security and Capital One. Petitioner remained unemployed for most of 2001. Accordingly, payments were made during 2001 by American Security and Capital One to the banks that had issued the credit cards in partial payment of amounts due by petitioner on his credit cards. During 2001, petitioner owed approximately $45,000 in credit card debt.

Pursuant to the terms of the credit card insurance contracts, American Security paid $11,396 to the applicable bank in partial payment of petitioner's credit card debt and Capital One paid $4,448 to the applicable bank in partial payment of petitioner's credit card debt. As a result of paying petitioner's credit card obligations, American Security and Capital One reported these payments to the Internal Revenue

---

[2]The record does not reflect the amounts paid as premiums for such insurance or how such premiums were paid.

Service (IRS) and issued petitioner information returns[3] as follows:

| Issuer | Reporting form | Amount |
|--------|----------------|--------|
| American Security | 1099-C | $11,396.09 |
| Capital One Bank | 1099-MISC, Box 7 | $4,448.00 |
| TOTAL | | $15,844.09 |

However, at trial respondent produced evidence to substantiate payments from American Security of only $10,800. Respondent's counsel admitted that he did not know how the amount of $11,396[4] was calculated by American Security. Therefore, respondent conceded the difference in payments of $596. As a result, $15,248 is the total amount of unreported income remaining at issue. Petitioner did not include these amounts as income in his Federal income tax return for 2001. In the notice of deficiency, respondent determined that these amounts constituted gross income.

---

[3]Petitioner claims that he did not receive the applicable Forms 1099; however, petitioner admitted that he was aware that such payments were being made during tax year 2001.

[4]Amount rounded to the nearest dollar.

## Discussion[5]

Respondent determined that petitioner failed to report income in tax year 2001 in the amount of $15,844[6]. However, petitioner argues that such payments were made pursuant to credit card insurance policies and, as such, are not income. Petitioner contends that the factual situation here is analogous to the situation where an insured automobile is damaged in an accident. The insurance company insuring the vehicle pays the body shop for the cost of the repairs, and, in such a situation, the payments do not constitute gross income to the vehicle owner.

Section 61(a) defines gross income as "all income from whatever source derived," unless otherwise provided. The Supreme Court has consistently given this definition of gross income a liberal construction "in recognition of the intention of Congress to tax all gains except those specifically exempted." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955); see also Roemer v. Commissioner, 716 F.2d 693, 696 (9th Cir. 1983), revg. 79 T.C. 398 (1982) (all realized accessions to wealth are presumed taxable income, unless the taxpayer can demonstrate that an acquisition is specifically exempted from taxation).

---

[5]We decide the issue in this case without regard to the burden of proof. Accordingly, we need not decide whether the general rule of sec. 7491(a)(1) is applicable in this case. See Higbee v. Commissioner, 116 T.C. 438 (2001).

[6]As discussed previously, due to concessions, the amount of unreported income in issue is $15,248.

Moreover, section 61(a)(12) provides that gross income includes income from discharge of indebtedness.

The unemployment condition of American Security's and Capital One's insurance policies was satisfied, and petitioner, as a result, realized economic benefits by the amount of the payments the insurance companies paid towards petitioner's credit card liabilities during 2001. As a result of the payments made by the insurance companies, petitioner was relieved of the obligation of paying $10,800 and $4,448 to the issuers of his credit cards. In Amos v. Commissioner, 47 T.C. 65, 70 (1966), this Court stated:

> Although petitioner did not receive the amount directly from John Hancock Mutual Life Insurance Co., it is well settled that income is not limited to direct receipt of cash, Crane v. Commissioner, 331 U.S. 1 (1947); and that the payment of a legal obligation of a taxpayer is income to him even though such income is not actually received by him, Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 729 (1929); and Schaeffer v. Commissioner, 258 F.2d 861, 864 (C.A. 6, 1958), certiorari denied 360 U.S. 917. * * *

The Court, therefore, rejects petitioner's arguments. All of the charges on petitioner's credit cards represented economic benefits petitioner received. Petitioner was relieved of his liability to the extent of the amount paid by the insurance companies during 2001. Respondent, therefore, is sustained.

Petitioner incorrectly contends that the insurance payments on his credit cards are analogous to insurance recovery amounts for damaged property (such as automobiles) where, in the latter

instance, the insurance benefits do not constitute gross income. That argument is inappropriate in the present case. The general rule is that the taxability of recovery payments depends upon the nature of the claim. If the recovery represents damages for lost profits, the payment is considered income; however, if the recovery represents a replacement of capital destroyed or damaged, the recovery does not constitute income to the extent the recovery does not exceed the basis of the damaged or destroyed property. In the latter case, the recovery is a restoration or return of capital. State Fish Corp. v. Commissioner, 48 T.C. 465, 473 (1967). In the present case, petitioner had no basis in his credit card liability. Therefore, the payments by the insurance companies were not a recovery or restoration of capital. These payments were income.[7]

## Conclusion

We have considered all of the other arguments made by the parties, and, to the extent that we have not specifically addressed them, we conclude they are without merit.

---

[7]We note that the amounts reported as income could be reduced or offset by the premiums paid by petitioner for the insurance coverage for the benefits payable arising during the period of petitioner's unemployment. However, petitioner has failed to establish the total amount of the premiums paid for the year at issue or the portion of such premiums allocable to the unemployment risk (as distinguished from the premiums attributable to death or disability); therefore no such offset will be allowed.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.